**STATE of Maine**

v.

**Kenneth LINSCOTT.**

Supreme Judicial Court of Maine.

Argued March 14, 1980.

Decided July 1, 1980.

John Atwood, Dist. Atty. (orally), Rockland, for plaintiff.

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong by James Strong (orally), Rockland, for defendant.

Before GODFREY, NICHOLS, GLASS-MAN and ROBERTS, JJ., and DU-FRESNE, A. R. J.

GLASSMAN, Justice.

The defendant, Kenneth Linscott, appeals from a judgment of the Superior Court, Knox County, following a jury trial, adjudging him guilty of arson, 17–A M.R.S.A. § 802. The primary issue raised on this appeal is whether, by reason of two prior trials ending in mistrials, the defendant has been twice in jeopardy in violation of the double-jeopardy clauses of the Maine and United States Constitutions. We vacate the judgment of conviction.

On October 17, 1977, the defendant was indicted for arson for the burning of a barn in Thomaston, Maine. On May 2, 1978, a jury was drawn, and the trial took place the following day. The jury deliberated two hours and forty minutes and spent an additional half hour listening to a reading of certain trial testimony in response to its request. At that time, whether in response to a jury communication or on his own initiative is not evident, the trial Justice submitted a handwritten questionnaire to the jury and the jury checked the "yes" box in response to the question, "Are you hopelessly deadlocked and unable to agree upon a unanimous verdict?" At 6:40 p. m., the Justice declared a mistrial. The record does not show any participation by counsel in this decision.

On September 11 and 12, 1978, the defendant had a second jury trial. After one hour and fifty-three minutes of deliberations and an additional twenty minutes spent on a jury question, the jury informed the court that it was unable to reach a unanimous decision. The court responded: "That being the circumstances [sic] we have no alternative but to remove it from your consideration. The Clerk will place it on the trial list."

On September 20, 1978, the defendant filed a motion to dismiss the indictment on the bases (1) of double jeopardy and (2) that because two juries had been unable to reach a decision a reasonable doubt as to the defendant's guilt was established as a matter of law. The motion was denied on January 12, 1979.

The defendant's third trial began on August 6, 1979. The evidence presented was substantially the same as that at the first two trials. On August 8, 1979, the jury returned a verdict of guilty, and the defendant was subsequently sentenced to three years in the Maine State Prison. The defendant then brought this appeal.

On January 28, 1980, pursuant to M.R. Crim.P. 39C and 57(a), the State filed a motion to strike three "exhibits" attached to the defendant's brief on appeal. The "exhibits" consist of affidavits of two jurors as to the votes for and against acquittal at the defendant's two previous trials and of a note from the court reporter at those trials, apparently to counsel for the defendant on this appeal, as to the circumstances surrounding the declarations of mistrials. On January 29, 1980, this Court ordered that motion argued in conjunction with the merits of the appeal. On February 14, 1980, the defendant filed a motion to supplement the record on appeal, pursuant to M.R.Crim.P. 39(h), to include in that record the above-noted "exhibits." At oral argument, the Court took these motions under advisement.

Considering first the motions relating to the exhibits, we deny the defendant's motion to supplement the record and grant the State's motion to strike. M.R. Crim.P. 39(h), like M.R.Civ.P. 74(e), grants to both the Superior Court and the Law Court the power to supplement the record on appeal "[i]f any difference arises as to whether the record . . . truly discloses what occurred in the Superior Court or if anything material to either party is omitted from the record on appeal . . . ." M.R.Crim.P. 39(h). These rules were generally intended to allow correction of omissions from, and misstatements of, proceedings which were a matter of record in the court below. *See, e. g., Adams v. Alley,* Me., 340 A.2d 201, 206 (1975). Affidavits of jurors reciting jury room proceedings, particularly when not obtained until after the

filing of the appeal, do not fall into this category. Assuming, *arguendo*, such "evidence" is admissible at all, it cannot be presented for the first time on appeal. Finally, we cannot say that we find the affidavits in any way material to the issues before the Court.[1]

■ Turning to the double-jeopardy claim itself, we find that the propriety of the declaration of a mistrial in the first of the defendant's three trials is not properly before this Court. The defendant waived his claim with respect to this trial by his failure to raise the issue of double jeopardy either before or during his second trial. H. Glassman, *Maine Practice, Rules of Criminal Procedure* § 12.1 (1967); *see United States v. Scott*, 464 F.2d 832, 833 (D.C.Cir. 1972), and cases cited therein, and 1 C. Wright, *Federal Practice and Procedure* § 193 (1969).

■ The defendant did file a motion to dismiss the indictment on the grounds of double jeopardy prior to the third trial. That motion was denied. Thus, the double-jeopardy claim with respect to retrial after his second trial is properly before this Court on appeal from the judgment of conviction entered after verdict in his third jury trial.

Both article I, § 8, of the Maine Constitution and the fifth amendment of the United States Constitution[2] protect persons from being "twice put in jeopardy of life or limb" for the same offense.

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

*See also Arizona v. Washington*, 434 U.S. 497, 503–04, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978).

■ Jeopardy attaches when the jury is impaneled and sworn or when trial begins before a judge. *See State v. Slorah*, 118 Me. 203, 208, 106 A. 768, 770 (1919); *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Thus, there is no question that jeopardy attached at both the defendant's first and second trials.

■ Retrial of a defendant because of a mistrial resulting from a hung jury does not automatically violate the defendant's right to be free from double jeopardy. The classic statement of this principle was made by Mr. Justice Story:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on

---

1. Even if we did find these affidavits material and their admission not waived by failure to introduce them prior to the third trial, we question whether, as a policy matter, such affidavits should be allowed under the reasoning of this Court in *Patterson v. Rossignol*, Me., 245 A.2d 852 (1968). Although the defendant here is not seeking to impeach a verdict (since none was rendered in the first two trials) or to show any impropriety in the jury room, the situations specifically dealt with in *Patterson*, other courts have seen fit to extend the rule against admission of jurors' affidavits to hung jury cases, *e. g.*, *Magee v. Superior Court*, 34 Cal. App.3d 201, 109 Cal.Rptr. 758 (1973). Some of the same policy considerations which informed our decision in *Patterson* are equally applicable here—such as "the need to protect jurors in their communications to fellow jurors made in the confidence and secrecy of the jury room," *Patterson v. Rossignol, supra*, 245 A.2d at 857, and "the need to save jurors harmless from tampering and harassment by disappointed litigants." *Id.*

2. The double-jeopardy clause of the fifth amendment was made applicable to the states through the fourteenth amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

At the time of the hearing of the defendant's motion to dismiss, following the second trial, the Superior Court did not have a transcript of the second trial before it and the docket reflected only that the trial had taken two days but did not show the length of the jury's deliberations. It was conceded at oral argument before this Court that no evidentiary hearing was held on defendant's motion to dismiss.

 The United States Supreme Court has noted that because of the importance of the protection afforded by the right to be free from double jeopardy and "the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one." *Arizona v. Washington, supra,* 434 U.S. at 505, 98 S.Ct. at 830. This approach of placing the burden on the prosecutor to demonstrate that retrial would not violate the defendant's right to be free from double jeopardy is consistent with the approach taken when dealing with other constitutional protections afforded defendants in criminal cases. For example, when dealing with the fourth amendment right to be free from unreasonable searches and seizures, upon a showing by the defendant that the search and seizure were made without a warrant, the State must bear the burden of showing the reasonableness of the search and seizure. *E. g., State v. Heald,* Me., 314 A.2d 820, 829 (1973). Similarly, when dealing with the fifth amendment privilege against self-incrimination, upon an assertion by the defendant that he has made incriminating admissions or confessions, the State bears the burden of establishing that the statements were not compelled and that there has been compliance with the *Miranda* requirements. *E. g.,*

*State v. Collins,* Me., 297 A.2d 620, 635–36 (1972). In cases involving the sixth amendment right to confrontation, before using prior reported testimony the State must bear the burden of showing the unavailability of the witness. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

 In the instant case, at the time of the hearing on the motion to dismiss, the defendant made a prima facie showing of the applicability of the double-jeopardy provision of both the State and federal constitutions by the docket entries which revealed that the defendant had twice previously been tried for the same offense. It must be remembered that, "as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona v. Washington, supra,* 434 U.S. at 505, 98 S.Ct. at 830. Yet, the State made no attempt to show "manifest necessity" for the granting of the second mistrial. Because of this failure by the State, we must accept the record as it is. We have before us only a portion of the transcript of the second trial. We have examined the record that we have before us to determine if it demonstrates manifest necessity for the granting of the mistrial at the second trial.

The docket entries reveal that the trial began on September 11, 1978 and continued on the following day. The partial transcript which we have reveals that the jury, after being instructed, retired to commence its deliberations at 3:07 p. m. At 4:30 p. m., the jury returned to the courtroom with a question concerning the evidence. At 4:50 p. m., the jury returned to the jury room to continue its deliberations. At 5:20 p. m., the jury returned to the courtroom and the presiding Justice made the following statement:

> We have the following communication from the jury. The panel of jurors is unable to reach a unanimous decision. That being the circumstances [sic] we have no alternative but to remove it from your consideration. The Clerk will place it on the trial list. Thank you and you are excused until tomorrow morning at 9:00 a. m. This Court is now in recess until tomorrow morning.

This record does not show any effort by the presiding Justice to determine whether the jury was "genuinely deadlocked." [3] Such efforts might have properly included inquiry of the foreman as to whether there was any reasonable expectation that the jury might reach a unanimous verdict if permitted to deliberate longer. It might also have included similar inquiry of the individual members of the jury panel. *See Paulson v. Superior Court,* 58 Cal.2d 1, 7–8, 372 P.2d 641, 644, 22 Cal.Rptr. 649, 652 (1962).[4] Certainly, manifest necessity for a mistrial does not exist when a jury has been deliberating less than two hours, excluding time spent in the courtroom receiving an answer to a question,[5] and the court has received a single communication indicating an inability to arrive at a unanimous verdict.[6]

Moreover, defense counsel was not given an opportunity to participate in the decision whether to grant a mistrial.[7] We

do not intend to suggest that a mistrial may never be granted over the objection of a defendant when there is a genuinely deadlocked jury. Yet, "if the 'right to go to a particular tribunal is valued . . . the defendant has a significant interest in the decision whether or not to take the case from the jury.'" *Arizona v. Washington, supra,* 434 U.S. at 508–09 n.25, 98 S.Ct. at 832 n.25, *quoting United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1970).[8]

We recognize that a presiding Justice must be allowed to exercise a broad discretion in deciding whether to discharge a jury and that his decision to declare a mistrial should be accorded great deference by an appellate court. *Arizona v. Washington, supra,* 434 U.S. at 509–10, 98 S.Ct. at 832–833. Nevertheless, "[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." *Id.* at 510 n.28, 98 S.Ct. at 833 n.28. This is consistent with

---

3. "[T]he courts have held that the trial judge may discharge a *genuinely deadlocked jury* and require the defendant to submit to a second trial." *Arizona v. Washington, supra,* 434 U.S. at 509, 98 S.Ct. at 832. (Emphasis added). ABA Standards Relating to the Administration of Criminal Justice, *Trial by Jury* § 5.4(c) (Approved Draft, 1968), provides: "The jury may be *discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.*" (Emphasis added).

4. *See generally* ABA Standards, *supra* note 3 at § 5.4(b) and (c) (Commentary), for a description of some techniques to determine if there is a reasonable probability of jury agreement.

5. In the case of *Grigsby v. State,* 158 Tex.Crim. R. 484, 257 S.W.2d 110 (1953), following trial in a drunk driving case, the jury was discharged after one hour and forty-five minutes. The appellate court found an abuse of discretion, *quoting Hooper v. State,* 38 Tex.Crim. 252, 42 S.W. 398 (1899), for the proposition that "[i]t would be a remarkable case in which 2½ or 3 hours would be a sufficient time to render it altogether improbable that the jury could agree." *Id.*
In the Chicago Jury Project, of the 117 cases in which there was a hung jury after a trial of more than one day and less than three days, the jury was discharged after less than two hours in only nine percent of the cases and was discharged after between two and ten hours in

eighty-nine percent of the cases. H. Kalven & H. Zeisel, *The American Jury* 458 (Phoenix ed. 1971).

6. The general view adopted by the ABA does not limit the number of times a disagreeing jury may be sent out for further deliberations "as it is believed the jury should not be permitted to avoid a reasonable period of deliberations merely by repeated indications that it is unable to agree." ABA Standards, *supra* note 3 at § 5.4 (Commentary). Maine limits by statute the number of times a jury may be returned to the jury room. *See* 14 M.R.S.A. § 1106.

7. In jury disagreement cases, if the defendant either moves for or consents to the mistrial, he has waived his double-jeopardy plea. *State v. Small,* Me., 381 A.2d 1130, 1132 n.3 (1978); *United States v. Dinitz,* 424 U.S. 600, 606–08, 96 S.Ct. 1075, 1079–1080, 47 L.Ed.2d 267 (1976).

8. "In the absence of such a motion [for mistrial], the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. at 557.

the principle enunciated by Justice Story that the power to declare a mistrial for a hung jury "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . ." *United States v. Perez, supra,* 22 U.S. (9 Wheat.) at 580. Our jurisprudence has long recognized that judicial discretion is just what the words imply, a principled exercise of legal judgment, not a hasty action based on personal predilection, whim or caprice. *See State v. Sanborn,* 157 Me. 424, 440, 173 A.2d 854, 863 (1961).

Because we conclude that on this record the State failed to demonstrate manifest necessity for the granting of a mistrial at the defendant's second trial, his retrial was and is barred by the double-jeopardy provisions of our State and federal constitutions and the indictment against him must be dismissed.

The entry is:

Defendant's motion to supplement the record denied.

State's motion to strike exhibits granted; exhibits stricken.

Judgment of conviction vacated.

Remanded to the Superior Court with directions to dismiss the indictment.

All concurring.