# STATE of Maine

### v.

## Timothy ROWE.

Supreme Judicial Court of Maine.

Argued June 21, 1984.

Decided Aug. 7, 1984.

James E. Tierney, Atty. Gen., Nicholas M. Gess (orally), Fernand R. LaRochelle, Joseph A. Wannemacher, Asst. Attys. Gen., Augusta, for plaintiff.

Latty, French, Walker, Thrift & Goodrich, Robert Goodrich (orally), Robert N. Walker, Yarmouth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

On July 14, 1983, a Cumberland County jury found Timothy Rowe guilty of Hindering Apprehension or Prosecution (Class B), 17–A M.R.S.A. § 753(1)(C) & (2) (1983), for his participation in the destruction of evidence relating to a murder committed in Windham.[1] The defendant appeals the

---

1. Section 753 provides in pertinent part:

Hindering apprehension or prosecution

1. A person is guilty of hindering apprehension or prosecution if, with the intent to hinder, prevent or delay the discovery, appre-

judgment entered on the jury's verdict claiming that he was twice put in jeopardy for the same offense in violation of his constitutional rights. Me. Const. art. I, § 8. We agree and vacate the conviction.

By indictment dated January 13, 1983, the defendant was charged with the murder of Michael Moore and with hindering the apprehension or prosecution of another. His brother, Harold, was charged with murder in the same indictment. During the investigation of the murder, both Timothy and Harold gave statements to the police regarding Moore's death. Timothy's statement contains several admissions by Harold that he intentionally killed Moore.[2] Harold's statement recites admissions by Harold that he planned to kill Moore, had communicated this fact to Timothy and asked to use his gun, and in fact Moore had been shot with a gun allegedly supplied by Timothy, but his statement also relates facts indicating that the killing was accidental.[3]

■ The State chose to try Timothy and his brother jointly. On the third day of trial, after ten prosecution witnesses had testified, the State's attorney sought a ruling from the presiding justice as to the admissibility against Harold of a redacted version of the statement Timothy gave to the police. By making such a request, the State implicitly acknowledged that it anticipated a problem under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in gaining admission of Timothy's statement.[4] Timothy's counsel objected to the use of the redacted version and insisted that if the court permitted the State to use the statement in the joint prosecution, it be required to introduce the entire statement since the portion excised from the redacted version tended to show that Harold, not Timothy, committed the murder. The court advised counsel that *Bruton* prohibited the admission in evidence of Timothy's complete statement.

■ Outside the presence of the jury, the justice heard argument by the State that the admission of Timothy's redacted statement would not violate *Bruton* because it "interlocked" with the statement Harold gave to the police.[5] The justice expressed doubt that the statements were sufficiently interlocking to permit Timothy's redacted statement to be admitted under the State's theory, but did not formally rule on the issue until he heard Detective Johnson testify as to the substance

hension, prosecution, conviction or punishment of another person for the commission of a crime, he:

 ....

 C. Conceals, alters or destroys any physical evidence that might aid in the discovery, apprehension or conviction of such person;

 ....

 2. Hindering apprehension is a Class B crime if the defendant knew of conduct of the other person which has in fact resulted in a charge of murder or a Class A crime or which has in fact rendered the other person liable to such a charge. . . .

2. Timothy's statement was given to Maine State Police Detective Peter Herring during the late evening of December 10, 1982. The defendant dictated his statement to Herring because he suffers from a disability that prevents him from writing clearly. Timothy, however, read and signed the statement after Herring completed it.

3. Harold's statement was given to Maine State Police Sergeant Richard Johnson during the early morning of December 11, 1982. It consists of two typewritten pages containing both direct quotes from Harold as well as summations made by Sergeant Johnson.

4. *Bruton* holds that in joint trial cases, the admission in evidence of a non-testifying defendant's confession implicating his codefendant violates the codefendant's Sixth Amendment right to cross-examine his accusers. *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968).

5. Statements of codefendants "interlock," and therefore do not impermissibly infringe upon Sixth Amendment rights, when admitted at trial as long as the statements are "substantially similar and consistent on the major elements of the crime," *State v. Bleyl*, 435 A.2d 1349, 1364 (Me. 1981), and as long as the jury is instructed to limit its consideration of each statement to the defendant who made it. *Id.* at 1362 n. 10.

of the statement Harold gave to him.[6] After Johnson testified, the State advised the court that it would offer the testimony of Detective Herring regarding the content of Timothy's redacted statement. The justice acknowledged that the statements of Harold and Timothy had "interlocking features" but concluded that Timothy's statement could not be admitted in the joint prosecution even in its redacted form because it still tended to establish a critical element of the State's case, *viz.,* Harold's intent to kill Moore.[7]

Without consulting either defense counsel or the prosecutor, the justice ordered the cases severed. Apparently out of concern for potential double jeopardy issues, the prosecutor immediately inquired whether defense counsel had moved for severance. In effect, the prosecutor asked whether counsel consented to the order. Counsel for both Harold and Timothy made it clear that they were not requesting severance and the justice explained to the prosecutor that he understood that defense counsel maintained that the joint trial should go forward as long as the statements of Harold and Timothy were excluded in their entirety. Counsel for neither defendant, however, objected to the order.

A discussion ensued in chambers regarding which defendant would be severed from the proceedings. The State asked to complete the trial of Harold because, according to the prosecutor, "the evidence indicates ... that Harold Rowe committed the murder." The State expressed concern about the possibility of securing·a conviction of Timothy, whom the prosecutor viewed as the "less culpable person," and Harold's being acquitted in a subsequent proceeding. The justice granted the State's request to proceed with the trial of Harold.

In July 1983, after Timothy's counsel unsuccessfully argued that any further prosecution would violate his client's right to be free from double jeopardy, Timothy was retried on the same indictment. He was acquitted of murder but convicted of hindering apprehension or prosecution.

Following the primacy approach approved in *State v. Cadman,* 476 A.2d 1148 (Me.1984), we test the defendant's challenge by the Maine Constitution and we conclude that his trial after severance violated his right of not twice being put in "jeopardy of life or limb" guaranteed by article I, section 8.

■ It is a fundamental principle of criminal law that in a criminal prosecution tried to a jury, jeopardy attaches as soon as the jury is impaneled and sworn. *State v. Linscott,* 416 A.2d 255, 258 (Me.1980); *State v. Slorah,* 118 Me. 203, 208, 106 A. 768, 770 (1919). In jury disagreement cases, once jeopardy attaches, a defendant will not lose his opportunity to obtain a favorable verdict from a particular jury and will not be required to stand trial a second time unless he consents to a mistrial, *State v. Fredette,* 462 A.2d 17, 20 (Me.1983); *State v. Small,* 381 A.2d 1130, 1132 n. 3 (Me.1978); *Clukey v. State,* 160 Me. 198, 200, 202 A.2d 6, 8 (1964), or unless under all the circumstances, the mistrial was mandated by manifest necessity. *Henderson v. Wright,* 533 F.Supp. 1373, 1375–76 (D.Me.1982); *State v. McConvey,* 459 A.2d 562, 565–66 (Me.1983); *State v. Henderson,* 435 A.2d 1106, 1107 (Me.1981); *see Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). We view the severance order in the instant case as the functional equivalent of a declaration of a mistrial as to Timothy. Accordingly, because jeopardy attached to Timothy at the time the jury was impaneled and sworn at the joint trial with Harold on April 11, 1983, the defendant's retrial violated his right to be free from double jeop-

---

**6.** Johnson testified outside the presence of the jury in order to eliminate the possibility of prejudicing the rights of either defendant.

**7.** The State concedes in its brief on appeal that the justice was correct in ruling that the redacted statement could not be used without infringing on Harold's Sixth Amendment rights as recognized in *Bruton.*

ardy unless severance were mandated by manifest necessity.[8]

The double jeopardy provision of the Maine Constitution protects both the valued right of the accused to have his trial completed by a particular tribunal once jeopardy attaches as well as the public's interest in just judgments. *State v. Pierce,* 459 A.2d 148, 151 (Me.1983). When the circumstances of a particular case warrant judicial recognition that the interests of the public take precedence over the interests of the defendant, manifest necessity is present and retrial is constitutionally permissible. Because of the importance of a defendant's right to be free from double jeopardy, the State must shoulder the heavy burden of justifying a mistrial as manifestly necessary. *Linscott,* 416 A.2d at 259. Appellate decisions supply no mechanical formula to be applied by the trial court in determining whether a particular case presents facts that would justify a mistrial and permit a subsequent prosecution.[9] *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). There is no question, however, that a "high degree" of necessity is required

before a trial court properly can conclude that termination of the proceedings is appropriate. *Washington,* 434 U.S. at 506, 98 S.Ct. at 831; *Henderson v. Wright,* 533 F.Supp. at 1376. A trial justice enjoys broad discretion in making this determination, *Washington,* 434 U.S. at 510, 98 S.Ct. at 832; *McConvey,* 459 A.2d at 566; *State v. Henderson,* 435 A.2d at 1108, and his decision is entitled to great deference on appeal except where the record reveals a failure to exercise sound judicial discretion. *Linscott,* 416 A.2d at 260, quoting *Washington,* 434 U.S. at 510 n. 28, 98 S.Ct. at 832 n. 28.

In the instant case, the trial justice ordered severance after he concluded that Timothy's redacted statement, if admitted, would violate Harold's rights under *Bruton.* Although the justice's ruling was correct on the *Bruton* issue, the decision to sever Timothy's case was not a sound exercise of judicial discretion because the State failed to demonstrate at trial *any* necessity for the severance. Manifest necessity simply cannot exist where, as here, the trial justice had a clear alternative—sustaining

---

8. We do not accept the State's argument that defendant's retrial was authorized on the ground that he consented to the severance. We have already noted that the presiding justice ordered severance of the cases without first allowing counsel to participate in the decision to sever. This court has recognized previously that if a defendant's right to have his case decided by a particular tribunal is valued, "the defendant has a significant interest in the decision whether or not to take the case from the jury." *State v. Linscott,* 416 A.2d 255, 260 (Me.1980), quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1970). Although Timothy's counsel did not object to the severance order after it was made, he was not silent on the issue of severance. Timothy's counsel made it clear, in response to the prosecutor's inquiry, that he was not moving for severance and the trial justice acknowledged the position of counsel for both defendants—that it would be proper for the trial to continue as long as the statements of both defendants were excluded. On this record we cannot conclude that Timothy consented to the severance so as to relieve the State from its burden of justifying the severance by establishing manifest necessity. *See Linscott,* 416 A.2d at 259.

9. The classic formulation of the test was articulated by Mr. Justice Storey:

[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

 

Timothy's objection to the admission of the redacted statement—that would have both protected Harold's *Bruton* rights and preserved intact the joint prosecution format selected by the State.[10] *See Bretz v. Crist*, 546 F.2d 1336, 1347–50 (9th Cir.1976), *aff'd*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Moreover, there is no indication that the ends of public justice could not have been served had the State been required to continue with the prosecution without the admission into evidence of Timothy's redacted statement.

The State had in its possession the statements of Timothy and Harold for four months prior to the start of the joint trial and, as we have previously noted, should reasonably have foreseen a *Bruton* problem if it intended to offer some version of Timothy's statement at trial. In fact, the State acknowledges in its brief to this court that it created the *Bruton* problem by neglecting to obtain a pretrial ruling in conformance with the American Bar Association standard we approved in *State v. Wing*, 294 A.2d 418, 422–23 (Me.1972). *See* note 10 *supra.* The State cannot rely on a problem created by its own neglect to establish the existence of manifest necessity. By requiring Timothy again to stand trial for the offenses charged in the January 13, 1983 indictment, the State denied him the right guaranteed by article I, section 8, of the Maine Constitution: "No person, for the same offense, shall be twice put in jeopardy of life or limb."

The entry is:

Judgment of conviction vacated.

Remanded to the Superior Court with directions to dismiss the indictment.

All concurring.

**10.** We do not disapprove of joint prosecutions. *State v. Anderson*, 409 A.2d 1290, 1297 (Me. 1979); *State v. Rich*, 395 A.2d 1123, 1127–28 (Me.1978), quoting *United States v. Barber*, 442 F.2d 517, 529 (3d Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). In cases where a *Bruton* issue is likely to arise, however, we have strongly suggested that the issue is best resolved prior to the commencement of trial. *Anderson*, 409 A.2d at 1297–98; *State v. Elwell*, 380 A.2d 1016, 1020 n. 4 (Me. 1977); *State v. Wing*, 294 A.2d 418, 422–23 (Me. 1972) (approving A.B.A. Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, § 2.3). Indeed, in cases where, as in the instant case, *Bruton* violations can be foreseen clearly before trial, we have stated that separate prosecutions or some alternative means of guarding a defendant's Sixth Amendment rights is required. *State v. Bleyl*, 435 A.2d 1349, 1365 (Me.1981). In the present case, the State would have been well advised to have obtained a ruling from the presiding justice prior to trial as to the permitted use of the statements given by Harold and Timothy so that it could decide whether the joint prosecution alternative was advisable. M.R.Crim.P. 12(c).