STATE of Maine

v.

Daniel FLICK.

Supreme Judicial Court of Maine.

Argued May 9, 1985.

Decided July 12, 1985.

---

David W. Crook, Dist. Atty., Pamela J. Ames (orally), Asst. Dist. Atty., Augusta, for plaintiff.

Clifford, Clifford, Samp & Stone, Alan G. Stone (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

SCOLNIK, Justice.

Defendant Daniel Flick was charged with Obstructing Government Administration, 17–A M.R.S.A. 751 (1983), and has had two jury trials in Superior Court (Kennebec County). Each ended in the declaration of a mistrial. Following the second trial the Defendant moved to dismiss the complaint on the ground that a third trial would violate the double jeopardy clause of the Maine Constitution, Article I, § 8, and of the Fifth Amendment to the United States Constitution. The Superior Court denied the motion. Flick appeals under an exception to the final judgment rule, *State v. Hanson*, 483 A.2d 723, 724 (Me.1984). We vacate the order denying the motion and remand for entry of an order dismissing the complaint.

## I.

The Defendant was arrested on March 15, 1983. He was arraigned in District Court, Waterville, where he sought both a motion in limine to suppress a statement made by his brother Richard, who was present at the scene of the arrest and a transfer to Superior Court for a jury trial. The District Court ordered that, "[n]o third party may testify or be questioned at trial regarding [the statement]." It then transferred the case to the Superior Court. On August 11, 1983, the Defendant's first trial resulted in a hung jury. Deciding, after inquiry, that the jurors were "genuinely deadlocked," the court declared a mistrial. Flick's first appointed counsel withdrew from the case, the court appointed a second, and the retrial took place on January 25, 1984.

The Defendant's brother, Richard Flick, testified for the defense at the second trial. On direct examination, he was not asked whether or not he had made any statement at the time Daniel was arrested. Nonetheless, and without having first raised the

question of its admissibility notwithstanding the ruling in limine, the Assistant District Attorney in cross-examination confronted him with the statement. The defense counsel objected, but was overruled. During the next recess she moved for a mistrial. The presiding Justice was apparently taken by surprise when advised of the ruling in limine, but he confirmed his ruling that the statement was admissible and denied the motion for mistrial.

Before the jury returned, the Defendant complained to the court that he was unfairly prejudiced, *inter alia*, by the admission of the statement. The court explained its rationale, then let the trial proceed. The Defendant later made an oblique reference to the ruling in the course of his testimony on direct examination, whereupon the court sent the jury out and again discussed the issue directly with the Defendant. Their colloquy lasted for some time. The court asked the Defendant a number of questions about his concerns, to which he responded frankly. The Defendant became quite agitated, expressing his frustration at the extended proceedings, and his displeasure with his lawyers' tactics in both trials, the arresting officers' credibility and treatment of him, and the general cast of the proceedings, which he saw as severely biased against him. While he clearly felt the presiding Justice was also biased, he was civil throughout, though excited. The Justice not only permitted the petty tirade to continue, he prolonged it by questioning the Defendant about the range of his concerns. The defense counsel took no part in the colloquy and, indeed, nothing further was heard from her after the court began questioning the Defendant.

At the end of the exchange the court ordered a recess, then declared a mistrial, stating its reasons on the record. They were (1) its concern that Flick's relationships with his counsel "could be a problem with any conviction on appeal," (2) that it would not be "appropriate to proceed with that record having been made," and (3) that, given Flick's remarks "with regard to the court, I don't know the extent to which, if there was a conviction, I would be in a position to impose a fair sentence."

Finally, the court stated, "I am also, to make sure the record is clear and protected with regard to any future trial, would grant the motion for the reasons originally urged by defense counsel, although I continue to view that as not the extent of the problem suggested by defense counsel." At no time did the court consult the defense counsel about its decision, either to inquire whether the defense wished to renew its earlier motion for mistrial, or whether the Defendant consented to a mistrial on any other ground.

Flick's counsel received permission to withdraw soon after the trial. The court then appointed a third attorney who filed the present motion to dismiss on May 14, 1984. The motion asserts that neither mistrial was properly granted, and thus that the Defendant has been in jeopardy twice within the meaning of Article I, Section 8 and the Fifth Amendment. Alternatively, it asserts that the second prosecutor engaged in deliberate misconduct when she disregarded the ruling in limine in order to question Richard Flick about his statement. The defense argues that the complaint must be dismissed because of either instance of former jeopardy or because of the prosecutor's conduct.

The motion Justice considered the circumstances of both trials. As to the first, he found that the deadlocked jury made it "manifestly necessary" to declare a mistrial. As to the second, he found both "manifest necessity" *and* consent to the mistrial. Though he agreed with the presiding Justice that the prosecutor had not engaged in deliberate misconduct by eliciting the suppressed statement, the motion Justice found that the defendant's motion for mistrial was not withdrawn and constituted his consent to the trial court's ultimate declaration of mistrial. In addition, the motion Justice held that the reasons for mistrial stated on the record by the presid-

ing Justice constituted "manifest necessity."

## II.

"No person, for the same offense, shall be twice put in jeopardy of life or limb." Me. Const. art. I, § 8. This guarantee protects "the valued right of the accused to have his trial completed by a particular tribunal." *State v. Rowe*, 480 A.2d 778, 782 (Me.1984). The Fifth Amendment to the United States Constitution contains a similar provision. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court overruled *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and held that the Fourteenth Amendment made the Fifth Amendment applicable to the States. We have, of course, applied the double jeopardy prohibition as a matter of Maine constitutional or common law since well before *Benton*. *See, e.g., State v. Sanborn*, 157 Me. 424, 173 A.2d 854 (1961); *State v. Slorah*, 118 Me. 203, 106 A. 768 (1919); *Stephens v. Fassett*, 27 Me. 266 (1847).

In *State v. Howes*, 432 A.2d 419 (Me. 1981), we said that Article I, Section 8 "afford[s] protection essentially like that guaranteed by" the Fifth Amendment. *Id.* at 423. This is because both provisions have a common purpose and common roots in English law. The prohibition against double jeopardy "is another great privilege secured by the common law, as well as by the constitution." *Saco v. Wentworth*, 37 Me. 165, 175 (1853). As the Supreme Court said in *Green v. United States*,

> [t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an

alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continual state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *State v. Linscott*, 416 A.2d 255, 258 (Me.1980). Indeed, the exceptions to the rule barring retrial after former jeopardy also stem from a common origin, "[a]s early as the time of Blackstone at least," *State v. Slorah*, 118 Me. at 209, 106 A. at 770.[1]

This parallel, though separate, jurisprudential history is the reason that, while the United States Supreme Court's decisions "delineat[e] the binding effect on the States of the federal Constitution's protection against double jeopardy, [we may also] look upon them as most helpful guides regarding the scope of the protection against double jeopardy afforded by the Constitution of Maine." *State v. Howes*, 432 A.2d at 423. However, the vigor of the separate Maine constitutional provision throughout this history makes it equally clear that its protection does not *depend on* the interpretation of the federal Constitution.

While the drafters of Article I, Section 8 and the Fifth Amendment certainly sought the same objectives,

> [t]his does not, however, say much toward demonstrating the correct application of such a constitutional text. In particular, the proposition does not support the non sequitur that the United States Supreme Court's decisions under such a text not only deserve respect but presumptively fix its correct meaning also in state constitutions.

*State v. Kennedy*, 295 Ore. 260, 666 P.2d 1316, 1322 (1983).[2] Where, as in this case,

---

**1.** In *State v. Elden*, 41 Me. 165 (1856), this Court based its decision on the Fifth Amendment to the United States Constitution, calling it the "supreme law of the land," but noted the similar provision of Article I, Section 8. The Court discussed at length the common law origins of

the Double Jeopardy protection found in both constitutions.

**2.** In this regard, we adopt Justice Linde's succinct manifesto:

a defendant invokes the protection of Article I, Section 8, we should, *State v. Badger*, 141 Vt. 430, 450 A.2d 336, 346–47 (1982), and will, *State v. Rowe*, 480 A.2d at 781, examine the state constitutional claim before reaching any federal question. In doing so, we may use the Supreme Court opinions as "helpful guides" to the underlying policy of both double jeopardy provisions, but our citation to those opinions should not be read as an acknowledgement that federal law requires the result we reach, nor to diminish our view of the independent sufficiency of Article I, Section 8 as the basis for decision. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 3474–3478, 77 L.Ed.2d 1201 (1983).

### III.

The issues here are whether the mistrials were declared at the defendant's request or by his consent, and, if not, whether there existed such manifest necessity as to require overriding the Defendant's interest in being tried only once. We examine the circumstances of the second trial first.

"[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). The motion Justice held that, by his motion for mistrial, Flick consented to the discharge of the jury, and cannot now raise the plea of double jeopardy. The trial court had originally denied the motion in plain terms that could have left no doubt in the mind of the defense

counsel as to what the court meant.[3] In its ensuing debate with the Defendant the court reiterated its reasons for admitting the evidence and denying the mistrial. At no time did it ask the Defendant or his counsel whether they wished to renew the motion. Yet, at the time the court declared a mistrial, it gave the earlier motion as one reason, "to make sure the record is clear and protected with regard to any future trial," even though it still avowed its disagreement with the grounds of the motion. The issue, then, is whether the motion for mistrial that was denied could be revived by the court, *sua sponte*, and may now be relied on "to remove any barrier to reprosecution."

A defendant's valued right to have his case tried by only one tribunal means that he "has a significant interest in the decision whether or not to take the case from the jury." *State v. Rowe*, 480 A.2d at 782, n. 8, quoting from *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. In the absence of "manifest necessity" to declare a mistrial, the defendant has the right to "retain primary control over the course to be followed in the event of . . . error." *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). Following prosecutorial or judicial error "the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by [the] error," *id.*, but the choice is his nonetheless. "That a mistrial declared upon the request of the defendant does not ordinarily preclude retrial is simply the corollary of

This court like others has high regard for the opinions of the Supreme Court, particularly when they provide insight into the origin of provisions common to the state and federal bills of rights rather than only a contemporary "balance" of pragmatic considerations about which reasonable people may differ over time and among the several states. It is therefore to be expected that counsel and courts often will refer to federal decisions, or to commentary based on such decisions, even in debating an undecided issue under state law. Lest there be any doubt about it, when this court cites federal opinions in interpret-

ing a provision of [state] law, it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines.
*Id.* 666 P.2d at 1321 (footnote omitted).

**3.** *Compare Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) (where the trial court had explicitly kept the motion to dismiss under active consideration, its ultimate termination of the case was held to be at the defendant's request).

[his] right to 'retain primary control over the course to be followed....'" *Braxton v. United States*, 395 A.2d 759, 767 (D.C. Ct.App.1978).

■ Therefore, as the District of Columbia Court of Appeals cogently explained, whether retrial is barred "depends not only upon whether the declaration of mistrial followed a request by the defendant for a mistrial, but whether the mistrial was declared in a manner and under circumstances which fully recognize the right of the defendant to retain that primary control." *Id.* Even though the defendant has attempted once to waive his right to go to the jury (by the motion), he does not thereby waive the "primary right" to retain control if the attempt is rejected (by denial of the motion). *Id.* Thus,

> [w]here the request for mistrial is not granted and the trial proceedings resume, the defendant is again entitled to resume control over the course of those proceedings, a control which would be meaningless if subject to defeasance through a purported grant of a request made prior to the resumption of control.

*Id.*[4] This analysis is equally applicable to the double jeopardy clause of the Maine Constitution. Having reviewed the transcript, we conclude that, in the particular circumstances of this case, the mistrial was not declared in a manner that "fully recognize[d] the right of the defendant to retain that primary control," *Braxton v. United States*, 395 A.2d at 767, which is the "important consideration" in double jeopardy analysis. *United States v. Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080.

■ The trial resumed after the denial of the defense motion, but the court and the Defendant soon began their extended colloquy. The defense counsel, for whatever reason, played no further part in the trial at all. Following the colloquy, the court took a brief recess, then declared a mistrial immediately upon its return. We need not determine whether, as the motion Justice held, the Defendant "did not withdraw" his motion, since the trial court had unequivocally denied it. We agree with the Massachusetts Supreme Judicial Court that, "[i]f a judge decides to rest the decision to declare a mistrial on a defendant's earlier motion, the judge must inquire whether the defendant wishes to maintain the motion." *Jones v. Commonwealth*, 379 Mass. 607, 400 N.E.2d 242, 251 (Mass.1980). There is no indication in the record that this Defendant still wished to maintain his earlier motion at the time the court declared the mistrial. Therefore, we would be unable to conclude that Flick had been allowed to retain "primary control" over the remedy for the asserted prosecutorial misconduct, even if the trial court had belatedly agreed with him.[5] Here, the court quite clearly did not agree with the grounds for the earlier motion at the time it purportedly granted it. We hold that these circumstances do not satisfy the *Braxton* test, and that Flick's trial motion for mistrial cannot now be deemed a waiver of the protection of Article I, Section 8 of the Maine Constitution.[6]

**4.** The *Braxton* court continued,

> [w]ere the defendant, upon denial of his mistrial motion, not reinvested with his right to proceed to verdict, moreover, control over the course of further proceedings would necessarily devolve upon the trial judge and the prosecutor. A decision to abort the proceedings at some later stage, however, motivated, would be wholly unreviewable, for the defendant's earlier motion would have waived all of his rights. The potential for abuse is obvious. And where the trial judge's reasons for a later declaration of mistrial are not those earlier urged by the defendant, the potential for

> abuse would be unmitigated even by the presumed integrity of the trial judge.

*Id.* at 767–68.

**5.** If the court *did* come to agree with the grounds for the motion, but the defendant no longer wished to maintain it, the court could only declare a mistrial if the circumstances had created a "manifest necessity" to take the case from the jury.

**6.** It should be remembered that we are considering here only the Defendant's *motion* and not his tirade, behavior that the State argues *required* a mistrial. Because the "manifest necessity" inquiry concerns the propriety of declaring

Nor are we able to read the Defendant's statements during the colloquy as "consent" to the mistrial. He asserted, and the court acknowledged, his desire not to prolong the resolution of the charge. He stated, "[t]his has been eating at me for almost a year now, and I am tired, and I want this mess over with." Though the court once mentioned the possibility of a mistrial, it did so under the apparent impression that it could revive the motion *sua sponte*. Flick's reaction, though ambiguous, was, at best, one of resignation.[7] In these circumstances, we will "resolve any doubt in favor of the liberty of the citizen, rather than in favor of [the] exercise of what would be an unlimited, uncertain, and arbitrary judicial discretion." *Braxton v. United States*, 395 A.2d at 773, paraphrasing *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963). We will not read these remarks as a waiver of the Defendant's valuable right to a completed trial before the jury selected for this case.

### IV.

Former jeopardy is no bar to reprosecution when a mistrial is declared, even over the defendant's objection, if there is "urgent, manifest or imperious necessity" to take the case from the jury. *State v. Sanborn*, 157 Me. at 446, 173 A.2d at 865. This is because the public interest in fair trials may be said to override the defendant's interest in a single trial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *State v. Rowe*, 480 A.2d at 782.

Nonetheless, the defendant's "right to go to a particular tribunal," *State v. Linscott*, 416 A.2d 255, 260 (Me.1980), is an important one, and the trial court must exercise its discretion to declare a mistrial "with the greatest caution, under urgent circumstances, and for very plain and obvious causes...." *United State v. Perez*, 22 U.S. (9 Wheat.) at 580. Under the Maine Constitution, "[m]anifest necessity simply cannot exist where ... the trial justice had a clear alternative" that would protect the rights of both the defendant and the State. *State v. Rowe*, 480 A.2d at 782.[8]

While "it is also true that a criminal trial is, even in the best of circumstances, a complicated affair to manage," *United States v. Jorn*, 400 U.S. at 479, 91 S.Ct. at 554, the court must take care that it does not itself create a situation that it can only resolve by terminating the trial. A close examination of the transcript of Flick's second trial shows that the trial court's own actions primarily contributed to the situation in which it finally felt its impartiality was compromised.

The court should have attempted to resolve the problems through counsel or undertaken measures available for dealing with a disruptive defendant. Instead it prolonged the Defendant's outpouring of frustration by encouraging him to speak his mind. While this was, certainly, an understandable attempt to obtain the Defendant's compliance with the court's rulings, it had the result of compounding the difficult situation.

---

a mistrial *despite* the defendant's wish to complete the trial, it is distinct from the question whether he consented. *E.g., State v. Rowe*, 480 A.2d at 782, n. 8.

Nor do we find credible the State's argument that the Defendant intentionally provoked a mistrial. The motion Justice did not make such a finding and our own reading of the transcript does not find support for this view.

7. The Court: "Mr. Flick, you say you want to get it over with today, but you understand that if I do declare a mistrial that it will be prolonged for some period of time?"

The Witness: "I know, and if we do get a mistrial I don't know what I am going to do, go talk to, shop for a lawyer, I guess; go for percentage. I don't know. I want to just get this thing over with a long time ago, and I was going to not sue...."

8. *Compare* the Fifth Amendment cases supporting a similar view, *e.g., Arizona v. Washington*, 434 U.S. 497, 516, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978); *United States v. Jorn*, 400 U.S. at 487, 91 S.Ct. at 558; *United States v. Pierce*, 593 F.2d 415, 417 (1st Cir.1979).

It would, of course, be "impossible to define all the circumstances which would render it proper to interfere" once the jury is empaneled. *United States v. Perez*, 22 U.S. (9 Wheat.) at 580; *State v. Linscott*, 416 A.2d at 259. Thus, it may well be that a defendant's statements could so bias the presiding Justice that there would be "manifest necessity" for a mistrial. Indeed, this trial court had no acceptable alternative to declaring a mistrial when it determined that its impartiality had become compromised.

But this commendable demonstration of integrity does not, alone, remove the double jeopardy bar. The court had reached that point largely as a result of its engagement of the Defendant in an argument and discussion. The public interest in fair trials does not permit the court to go so far in this direction that it finds itself unable to continue to preside, yet requires the Defendant to bear the burden. The Defendant's right to a trial by this jury is too important to permit its deprivation in this fashion. Thus, we conclude that a third trial would be barred by Article I, Section 8 of the Maine Constitution.

Accordingly, we do not reach the Defendant's Fifth Amendment claim. *State v. Rowe*, 480 A.2d at 781; *State v. Cadman*, 476 A.2d 1148, 1150 (Me.1984). Nor need we consider the circumstances in which Flick's first trial was concluded, or his final contention that the prosecutor in his second trial deliberately provoked the mistrial.

The entry is:

Order denying motion to dismiss vacated.

Remanded for entry of an order dismissing the complaint.

All concurring.