STATE of Maine

v.

Dennis Eugene FRIEL.

Supreme Judicial Court of Maine.

Argued Sept. 3, 1985.

Decided Nov. 4, 1985.

Charles K. Leadbetter, Wayne S. Moss, Eric E. Wright (orally), Asst. Attys. Gen., Augusta, for the State.

Andrews B. Campbell (orally), Jura Burdinik, Campbell Law Office, Bowdoinham, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

ROBERTS, Justice.

The State appeals from an order of the Superior Court, Knox County, dismissing an indictment against Dennis Eugene Friel on the ground of former jeopardy. The State contends that the mistrial order, which terminated the previous trial, was consented to by the defendant or, alternatively, was justified by manifest necessity. Because we find no support for the State's contentions, we affirm the dismissal.

## I.

The Grand Jury for Androscoggin County returned a one-count indictment charging Friel and a codefendant with aggravated criminal mischief pursuant to 17–A M.R.S.A. § 805. The indictment alleged that the defendants damaged some thirty churches and one town hall in Androscoggin, Sagadahoc, and Cumberland Counties. At the defendants' arraignment the Superior Court appointed counsel. Andrews B. Campbell was appointed to represent Friel.

After a change of venue, the jury trial of the defendants began on September 10, 1984 in the Superior Court, Knox County. On behalf of Friel, Campbell moved for a mistrial on three occasions during the course of the trial. The court expressly denied the first two motions and implicitly denied the third by continuing with the trial. Campbell made the last mistrial motion on the third day of trial after Friel, in the absence of the jury, had been found guilty of contempt of court, summarily sentenced to three days in jail, and removed from the courtroom.[1] Friel was placed in a room where he was able to listen to the courtroom proceedings.

After Friel was removed from the courtroom, Campbell twice announced to the

---

1. We have since affirmed Friel's contempt conviction. *State v. Friel,* 497 A.2d 475 (Me.1985).

court that, on his client's order, he would "stand mute." Thereafter, without the court's permission and after being warned of the consequences by the court, Campbell left the courtroom and returned three times. His behavior prompted the court to warn Campbell, in the absence of the jury, that Campbell would be held in contempt of court if he did not desist from his disruptive activities. Campbell replied that his client's interests demanded that his client be in federal court. The court then found Campbell guilty of contempt, but stayed the sentence until the trial concluded or Campbell failed to appear in court, whichever occurred first.[2]

After returning from his third absence, Campbell refused to cross-examine a witness on his client's behalf, and the court reminded Campbell of his duty to represent his client. Campbell then adopted as his own the decision to stand mute. Thereafter, Campbell reconfirmed that the decision to stand mute was his own as well as his client's. On five occasions Campbell declined to cross-examine four State's witnesses, and, with the exception of making one objection, he refused to participate in the substance of the trial after his client's removal.

During the luncheon recess on September 12, the presiding justice called the State's attorney, the attorney for the co-defendant, and a court reporter into chambers and announced his decision to declare a mistrial in the case against Friel. He stated as his reason for declaring the mistrial Campbell's refusal to represent Friel's interests in court. He further stated that such refusal amounted to ineffective assistance of counsel in violation of the Code of Professional Responsibility. Neither Friel nor Campbell was present at the chambers conference, and neither was consulted regarding the decision to declare a mistrial.

Following the chambers conference, in open court, the presiding justice announced his intention to Campbell for the first time. The presiding justice announced that Campbell's ineffective assistance was in violation of the Code of Professional Responsibility and created a manifest necessity for the mistrial order. The court did not find that he intended to provoke the mistrial. Incident to the mistrial order the court also revoked Campbell's appointment to represent Friel. Campbell objected to the court order and reasserted that he acted pursuant to Friel's instructions and according to his best legal judgment. Friel was not present in court during the declaration of the mistrial. The State dismissed its prosecution of the codefendant with his consent pursuant to M.R.Crim.P. 48(a).

On December 12, 1984 Friel's case was rescheduled for trial. The defendant filed a motion to dismiss all charges on the ground of former jeopardy. On January 29, 1985 the Superior Court, Knox County, heard arguments on the merits of the defendant's motion. After reviewing the trial court record, affidavits submitted by the State, and counsels' memoranda, the court granted the motion to dismiss, finding that the defendant did not consent to the mistrial and that no manifest necessity existed.

## II.

The State argues that we may properly disregard the motion justice's decision and focus our appellate review on the propriety of the trial justice's declaration of a mistrial. The State contends that the motion justice's ruling is merely the vehicle by which this Court acquires appellate jurisdiction, and that we should exercise our independent judgment in ruling from the written record. We disagree with the State's characterization of the scope of appellate review.

■ We have recognized that the relevant record for appellate review is the record before the justice at the motion

---

**2.** We have since affirmed Campbell's contempt conviction. *State v. Campbell,* 497 A.2d 467 (Me.1985).

hearing. *See State v. Pierce,* 459 A.2d 148, 150–51 (Me.1983). The defendant's motion to dismiss the indictment was brought pursuant to M.R.Crim.P. 12(b)(2). Under Rule 12(b)(4) the court hearing the motion shall determine all issues of fact necessary to decide the motion and may accept evidence in the form of affidavits or in such other form as the court may direct. Because the motion justice had factfinding power, the proceeding before the motion justice was not an appellate review. The State had the burden at the motion hearing, by introducing evidence or otherwise, to show that the defendant consented to the mistrial or that a mistrial order was manifestly necessary under the circumstances. *State v. Rowe,* 480 A.2d 778, 782 (Me.1984); *State v. Linscott,* 416 A.2d 255, 259 (Me.1980).

 We must necessarily review the motion justice's decision for errors of law and his findings of fact for clear error. When either party relies upon the trial court record, the motion justice must give deference to any of the trial court's findings of fact that are supported by the record. In our review we do examine the trial court's findings, but only to determine whether the motion justice has given them appropriate deference. We do not directly review the decision of the trial court.

### III.

 Both the Federal and the Maine Constitutions protect persons in this State from being put twice in jeopardy of life or limb for the same offense. *See* U.S. Const. amend. V, (held applicable to the states in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)); Me. Const. art. I, § 8. The guarantee against double jeopardy protects the right of the accused to have a trial completed by a particular tribunal. *Rowe,* 480 A.2d at 782. Despite this guarantee, the prohibition against double jeopardy usually will not bar retrial of the defendant if the defendant consented to the mistrial declaration. *State v. Flick,* 495 A.2d 339, 344 (Me.1985) (quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)).

 The State argues that Friel did consent to the mistrial. The motion justice, however, found no consent to the mistrial order. We cannot say that his finding is clearly erroneous. Although defense counsel moved for a mistrial three times during the course of the trial, the court expressly denied the first two motions and implicitly denied the third by continuing with the trial. Upon later declaring the mistrial, the trial court made no inquiry into whether the defendant wished to renew the motion. A court cannot raise the mistrial issue *sua sponte* and deem the defendant to have consented via a prior denied motion. *Flick,* 495 A.2d at 345. Allowing the court to revive the defendant's motion *sua sponte* would deprive the defendant of his right to retain primary control over the course of the trial. *Id.* Thus, the motion justice properly found no consent to the mistrial order.

### IV.

 Even without the defendant's consent, the court may declare a mistrial without invoking the double jeopardy protection if it finds manifest necessity to take the case from the jury to preserve the public's interest in a fair trial. *Flick,* 495 A.2d at 346. If the trial court has an alternative to declaring a mistrial, and that alternative protects both the rights of the defendant and the State, then manifest necessity cannot exist. *Id.* (quoting *Rowe,* 480 A.2d at 782). In the case at bar, the motion justice examined the trial court's order and the trial transcript. Although he observed that the defense attorney's actions were both "shameful" and "bizarre," he concluded that they did not require taking the case from the jury. We find no error in that conclusion.

As we have previously decided, the trial court properly found Campbell in contempt for his conduct in repeatedly interrupting the trial by leaving the courtroom and ignoring the authority of the trial court to

control the trial. That contemptuous conduct of Campbell, however, was not the basis of the mistrial order. Without consulting either Friel or Campbell the court announced its intention to declare the mistrial at a chamber conference held with the attorneys for Friel's codefendant and the State. At that conference the court stated as its reason for the decision the ineffective assistance of counsel rendered by Campbell to Friel. The court assessed Campbell's assistance as ineffective not because of his contemptuous behavior, but because of Campbell's announced decision to "stand mute."

Thereafter, in open court, and again without consulting either Friel or his attorney, the court declared a mistrial with respect to Friel because it found that "the acts of counsel in failing to actively represent Friel amount to a disregard for the interest of public justice, and ... due to manifest error as a result of those acts, the ends of justice require that a mistrial be declared for Mr. Friel." Without deciding whether Campbell's conduct amounted to ineffective assistance of counsel, we hold that the motion justice did not err in finding that Campbell's decision to stand mute did not create a manifest necessity to declare a mistrial.[3]

We recognize that the trial court has an interest in conducting an orderly trial to maintain the integrity necessary to the proper functioning of the judicial system, but the court may not disregard important rights of the defendant. We find no support for the proposition urged by the State that manifest necessity need not be shown when a mistrial results from conduct of the defense. Nor are we persuaded that the motion justice was compelled to find that the State had met its burden of proving manifest necessity. In support of its position, the State cites *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), and *Sundel v. Justices of the Superior Court of Rhode Island*, 728 F.2d 40 (1st Cir.1984). In each of these cases, after the trial judge properly revoked an out-of-state attorney's permission to represent the defendant, the court offered the defendant several options for further proceedings before the court declared a mistrial. In both cases the defendants retained primary control over the course to be followed. In the case at bar, however, the court did not consult defense counsel or the defendant before issuing the order. The court thereby denied the defendant any control of the proceedings. In sum, we find no clear error in the Superior Court determination that the State failed to prove manifest necessity for the mistrial order.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** The State does not allege nor did the trial court find, that possible jury prejudice would have denied either Friel or the State a fair trial. The sole ground for the mistrial order was the quality of the legal assistance rendered to Friel.

Though we do not decide the question here, we note that at least one jurisdiction, California, has held that defense counsel's refusal to participate actively in the defendant's trial, regardless of the defendant's assent to counsel's behavior, deprives the defendant of effective assistance of counsel. *E.g., People v. McKenzie*, 34 Cal.3d 616, 668 P.2d 769, 194 Cal.Rptr. 462 (1983). Furthermore, where counsel renders such ineffective assistance, the trial court has the option of revoking counsel's appointment. *People v. Shelley*, 156 Cal.App.3d 521, 531, 202 Cal.Rptr. 874, 880 (1984). Even when the trial court rightfully revokes counsel's appointment, the court should still resort to options less drastic than a *sua sponte* mistrial. *See id.*, 202 Cal. Rptr. at 880.