STATE of Maine

v.

Dalmon LANDRY.

Supreme Judicial Court of Maine.

Argued Oct. 28, 1991.
Decided Dec. 3, 1991.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for plaintiff.

Schuyler G. Steele (orally), Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Defendant Dalmon Landry appeals his conviction for criminal threatening with a dangerous weapon and tampering with a witness on the ground of double jeopardy.[1] We conclude that the Superior Court's finding of a manifest necessity for the declaration of a mistrial is unsupported in the record, and we vacate the convictions.

In 1989, defendant was indicted for criminal threatening with a dangerous weapon (17–A M.R.S.A. § 209 (1983)) and witness tampering (17–A M.R.S.A. § 454 (1983)). The two charges were consolidated for trial with a charge of assault. At the end of a two-day trial in Superior Court (Somerset County, *Alexander, J.*), the jury commenced deliberations at 11:38 a.m. At 1:36 p.m. the jury sent a note stating that its members were divided on the criminal threatening and witness tampering charges, but had reached a verdict on the

---

1. Both article I, § 8, of the Maine Constitution and the fifth amendment of the United States Constitution, applied to the states by the four- teenth amendment, prohibit the government from twice putting a person in jeopardy for the same offense.

assault charge. The presiding justice brought the jury into the courtroom for reinstruction on the two crimes. The jury resumed deliberations at 1:43 p.m. and an hour later the foreman notified the court that the jury was unable to agree to a verdict on the two charges. With the agreement of counsel, the presiding justice brought the jury into the courtroom to take the verdict on the assault charge and to determine if the jury was deadlocked on the remaining charges.

In open court, the presiding justice asked the foreman if he thought it possible for the jury to reach a verdict on the criminal threatening and witness tampering charges. The foreman answered no. The presiding justice then asked the jury, collectively, if they would be able to reach a verdict on the two charges. Based on his observations of their nonverbal responses, he found the jury to be "emphatically, unequivocally ... in disagreement." Finding manifest necessity, he declared a mistrial over the objections of both counsel. Prior to the second trial, defendant moved to dismiss on the ground of double jeopardy. The motion justice (*Brody, C.J.*), relying on the presiding justice's characterization of the jury's response, denied the motion.

The power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *State v. Linscott,* 416 A.2d 255, 261 (Me.1980) (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). We have held that a defendant cannot be deprived of the important right to trial by a particular tribunal unless the defendant consents or "urgent, manifest or imperious necessity" requires a mistrial. *State v. Flick,* 495 A.2d 339, 346 (Me.1985) (quoting *State v. Sanborn,* 157 Me. 424, 446, 173 A.2d 854, 865 (1961)).

■ In cases involving jury disagreement, the jury must be genuinely deadlocked and there must be no reasonable probability of an agreement before manifest necessity for a mistrial exists. *State v. Linscott,* 416 A.2d 255, 260 (Me.1980). Although, on a later motion to dismiss on the ground of double jeopardy, the motion justice defers to any factual findings that are made by the presiding justice and are supported by the record, it is the ruling of the motion justice that we review. We are required to determine whether the deference afforded by the motion justice is appropriate, whether the findings of fact on the motion are supported by substantial evidence, and whether the legal conclusion is correct. *See State v. Friel,* 500 A.2d 631, 634 (Me.1985). In reviewing a determination that the necessity for a mistrial is manifest, *i.e.,* evident, obvious, and apparent, we have focused on the following objective factors:

> 1) The number of hours the jury had deliberated, 2) the number of communications from the jury indicating an inability to reach a verdict, 3) whether each individual juror was asked whether any reasonable expectations of reaching a verdict existed, and 4) whether the defendant's counsel was provided an opportunity to participate in the decision to declare a mistrial.

*State v. Derby,* 581 A.2d 815, 817 (Me. 1990).

■ We conclude that the record before the motion justice in the present case fails to demonstrate a manifest necessity for the granting of a mistrial. The jury had been deliberating for only about three hours, including the time that it had been served lunch and the time it was in the courtroom to receive additional instructions. The jury had communicated its inability to reach a verdict on only two occasions. The members of the jury were not polled individually, the trial justice concluding from responses unrevealed by the record that the jurors would be unable to reach a verdict. Finally, defense counsel's opportunity to participate in the decision to declare a mistrial was confined to an objection to the court's announced intention to take such an action. At that time, defense counsel disagreed that there was any factual basis for concluding that a mistrial was necessary. The presiding justice's action was predicated solely on his observation that the jury's nonverbal response was emphatic and un-

equivocal. The motion justice, accepting the presiding justice's conclusion at face value, failed to consider the four objective factors discussed in *Derby.* Clearly, the concept of "urgent, manifest or imperious" necessity requires that the record contain more than the subjective impressions of the presiding justice before a defendant is stripped of his constitutional protection against double jeopardy.

The entry is:

Judgments vacated. Remanded to the Superior Court with directions to enter an order granting defendant's motion to dismiss the indictment.

ROBERTS, GLASSMAN and COLLINS, JJ., concurring.

McKUSICK, Chief Justice, with whom CLIFFORD, Justice, joins, dissenting.

This was a close case for the Superior Court. At the first trial, the trial justice in my opinion could well have called the mistrial question either way—he could have declared the mistrial at the time he did, or he could have sent the jury back for more deliberation. And, on the motion to dismiss filed prior to the start of the second trial, the motion justice could have resolved the factual question, whether the first jury had been genuinely deadlocked, either way—he could have found as a fact, as he did, that further deliberation had become futile by the time of the mistrial, or he could have concluded that the jury was not genuinely deadlocked. On appeal we could not say that either finding of fact was clearly erroneous.

In my judgment, however, this case is not a close one for the Law Court. On appeal it is not a close case when we apply the standard of appellate review that is compelled by our past decisions. In reviewing the factual decision of the motion justice, we must recognize, just as the justice had to recognize in making that decision, that "[t]he trial justice is in the best position to weigh all the considerations to determine whether the jury may reach [a verdict]" and that "[a]s a result, the trial justice's decision should be accorded great deference." *State v. McConvey,* 459 A.2d

562, 566 (Me.1983). Further, we review the motion justice's finding of fact, that the first jury was genuinely deadlocked, only for clear error. *See State v. Friel,* 500 A.2d 631, 634 (Me.1985). The clear error standard is a demanding one:

> An appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). None of the three branches of *Harmon v. Emerson* justifies our rejecting the motion justice's finding of fact that the jury was genuinely deadlocked in defendant Landry's first trial.

Defendant's first jury trial in the Superior Court (Somerset County, *Alexander, J.*) started on the forenoon of January 10, 1990. The next day, the jury recessed to begin deliberation at 11:38 a.m. At 1:36 p.m. the trial justice received a note from the jury stating that its members were in disagreement on the criminal threatening and witness tampering charges, but had reached a verdict on the assault charge. The trial justice proposed to counsel for the parties that he bring the jury into the courtroom, instruct it that it should keep deliberating because it had not been deliberating for long, and reinstruct it on the two crimes. Counsel agreed.

After receiving the trial justice's additional instructions, the jury returned to the jury room at 1:43 p.m. to deliberate. During the deliberations that followed, the justice and counsel could overhear, without detecting what was said, loud noise from the jury room indicating what the justice later characterized as "clearly substantial disagreement" and as "sharp disagreement." At 2:47 p.m. the jury again sent out a note to the trial justice that it was unable to agree to a verdict on the two

charges. The justice then proposed to counsel that he bring the jury back into the courtroom to take the verdict on the assault charge and to determine if the jury was hung on the other charges. Again, counsel agreed.

In the courtroom the trial justice asked the foreman, "[W]ith respect to each of those [criminal threatening and witness tampering charges], do you think there is any possibility that with further deliberations you might reach a verdict?" The foreman answered, "No." The trial justice then turned to the other jurors and asked them, "Members of the jury, I will ask you—the rest of you collectively, do you think there is any possibility that with further deliberations you would be able to reach a verdict on those charges?" The transcript then reports: "(At this time, the jury responded.)" Whatever the jurors' response was, the trial justice commented: "Okay. [They s]eem to be saying that rather emphatically." Based on his observations of all the individual jurors, the trial justice in the bench conference that immediately followed found the jury to be "emphatically, unequivocally ... in disagreement." Over only general objections from both counsel, the justice found manifest necessity and declared a mistrial on the criminal threatening and witness tampering charges.

On the evidence before him, the motion justice (Brody, C.J.) committed no clear error in later finding that the jury had been genuinely deadlocked at the first trial. The entire trial had lasted only a little beyond one day and the jury had heard only a few witnesses. During its deliberations, the jury twice notified the court that it was unable to reach a verdict on the threatening and tampering charges. The jurors' disagreement was made more emphatic and evident by the noise that had come from the jury room during deliberations. Although the members of the jury were not polled one-by-one, the trial justice did determine by a question addressed to all of the jurors that they unanimously and emphatically agreed with the foreman that the jury would not be able to reach a verdict on those two charges. Both the

prosecutor and defense counsel entered only general objections to the order of mistrial, emphasizing that time remained in the afternoon, the weather was good for traveling and no emergency existed, and "that it can't hurt to let them deliberate somewhat longer." Neither registered any objection to, or voided any disagreement with, the trial justice's specific statement at the bench after questioning the jurors— "the jury is emphatically, unequivocally, [from] the way they are shaking their heads and looking at me and so forth ... they are in disagreement and are not likely with further deliberations to be able to reach an agreement." The trial justice was in the unique position to assess, in light of the totality of the circumstances, the jurors' responses to his inquiry and to infer from them that the jury was genuinely deadlocked. The motion justice later gave appropriate deference to that consideration in making his finding, here being reviewed, that the State had proved manifest necessity because the jury was genuinely deadlocked.

By themselves, our past statements that only an "urgent, manifest or imperious necessity" justifies a trial justice's declaration of a mistrial do not help much in deciding this appeal. The simple, straightforward question for us is whether the two Superior Court justices were wrong—and clearly so—in finding as a fact that the first jury at 2:47 p.m. on January 11, 1990, was genuinely deadlocked and had no reasonable probability of agreement. *See State v. Derby*, 581 A.2d 815, 817 (Me. 1990). This case is not one where outside factors, such as a storm-created travel emergency or improper juror contacts, might impair the impartiality of the jury deliberations. There is no lack of "imperious" necessity for the mistrial in the present circumstances which gave both of the Superior Court justices full evidentiary support for their conclusions that sending the jury out again would have served no purpose. Of course this appeal might have been avoided if the trial justice had ordered the jury to spend the rest of the afternoon in further deliberations, however clamor-

ous they might become; but the vindication of the constitutional protection against double jeopardy does not depend upon making the first jury go through useless motions for a set length of time. That constitutional guaranty is vindicated by requiring proof of the fact of genuine jury deadlock; where that proof is present, as it plainly is here, the declaration of a mistrial deprived defendant of nothing. His second trial did not violate the double jeopardy clause.

I would affirm the judgments entered in defendant's second trial convicting him of criminal threatening with a dangerous weapon and tampering with a witness.