2002 ME 59

### STATE of Maine

v.

### Matthew TORRIE.

Supreme Judicial Court of Maine.

Argued: March 6, 2002.
Decided: April 10, 2002.

Norman R. Croteau, District Attorney, Andrew Robinson, Asst. Dist. Atty. (orally), James Andrews, Asst. Dist. Atty., Farmington, for State.

Janet T. Mills, (orally), Wright & Mills, P.A., Skowhegan, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Matthew Torrie appeals from the order entered in the Superior Court (Franklin County, *Studstrup, J.*) denying his motion to dismiss [1] the criminal indictment brought against him pursuant to 17–A M.R.S.A. § 253(1)(A) (1983). Torrie asserts that the Superior Court erred in denying his motion to dismiss on grounds of double jeopardy because there was no manifest necessity for a mistrial. Because we find that the Superior Court did not exceed the bounds of its discretion when it declared a mistrial due to manifest necessity, we affirm.

[¶ 2] On April 10, 2000, Torrie was indicted for the Class A offense of gross sexual assault pursuant to 17–A M.R.S.A. § 253(1)(A) (1983). Following a number of pretrial discovery motions, a jury trial was

---

1. "[A] pretrial order denying a motion to dismiss based on double jeopardy grounds is immediately appealable under [an] exception to the final judgment rule." *State v. Nielsen,* 2000 ME 202, ¶ 1 n. 1, 761 A.2d 876, 878 n. 1 (quoting *State v. Lebroke,* 589 A.2d 941, 942–43 (Me.1991)).

held in Superior Court (*Gorman, J.*) on February 6–8, 2001. Because the alleged victim did not report the sexual assault until weeks after it occurred, there was no medical or forensic evidence. The case rested on the credibility of the alleged victim and the testimony of Torrie, who admitted that there was a sexual act but asserted that the act was consensual.

[¶ 3] The jury began deliberations at 12:32 p.m. on February 7, 2001. At 1:15 p.m., the judge received a note from the jury requesting a read-back of a defense witness's testimony. At 1:35 p.m., after receiving a request from the jury for a definition of the crime of gross sexual assault, the judge submitted, without objection, the definition included in the court's original instruction. At 2:32 p.m., the jury heard a five minute read-back of the defense witness's testimony previously requested. At 3:35 p.m., the Superior Court notified counsel that the jury had requested a read-back of the alleged victim's testimony. At 4:16 p.m., the Superior Court addressed the jury and instructed them that the requested read-back would be heard the next day; the jury was excused for the evening at 4:17 p.m.

[¶ 4] On February 8th from 8:52 a.m. until 9:06 a.m., the jury heard a read-back of the alleged victim's testimony and then continued deliberations. At 10:55 a.m., the court informed counsel that a note had been received that indicated that the jurors were deadlocked. The court recessed from 10:55 a.m. until 11:38 a.m. When court reconvened, the jury was brought in and the court, with the agreement of counsel, re-instructed the jury and then asked the foreman if further deliberations would be helpful; the foreman answered in the

negative. The court called counsel to sidebar and inquired whether the jury should be polled; Torrie's counsel requested that the jurors be polled "to see if they all agree that they cannot agree." Nine jurors indicated that further deliberations would not be helpful and three indicated otherwise.[2] The court then called counsel to sidebar a second time and the State requested that the jury be sent back for further deliberations. Torrie's counsel stated that "[i]f there was a mistrial declared at this point, I would object." At 11:45 p.m., the jury was excused to continue deliberations.

[¶ 5] At 12:57 p.m., the court informed counsel that it "had received a [second] note from the jury indicating that the jury remains deadlock [sic] with the same split that they had before."[3] The court then indicated that it was its "intention to bring the jury back in and, if that is confirmed, [the court] will declare a mistrial. Let's bring the jury back in, please." The record indicates that neither counsel objected to the court's actions prior to the jury being brought in. Once the jury was present in the courtroom, the court asked the foreman if the contents of the note were accurate and the foreman stated "I am satisfied, Your Honor, yes." The court responded "Okay. All right. I am determining that the jury is at a deadlock and that further deliberations will not allow them to reach a verdict and I am declaring a mistrial." Prior to the jury leaving the jury box, Torrie's counsel requested a conference at sidebar. Torrie's counsel then inquired, without objection, whether the court would be inclined to poll the jurors; the court denied the request. The jury was excused from the courtroom at 1:00

---

2. The Superior Court stated that there was an eight to four split, however, the record indicates that the split was nine to three.

3. The jury's note stated "Your Honor, we remain at a deadlock w/ the same vote(s) & margins as before."

p.m. After the jury was dismissed, a discussion regarding Torrie's bail then took place.

[¶ 6] On August 9, 2001, Torrie filed a motion to dismiss the indictment asserting that the State was prohibited, on the grounds of double jeopardy, from trying the case a second time. On September 28, 2001, a hearing was held in Superior Court (*Studstrup, J.*) and the motion to dismiss was taken under advisement.[4] On October 22, 2001, after applying the *Derby*[5] factors to this case, the Superior Court denied the motion to dismiss concluding that "the key findings of the trial court that there was a genuine deadlock and no reasonable probability of agreement are supported in the record and entitled to this court's deference." Torrie filed this timely appeal.

[¶ 7] Torrie asserts that he was deprived of his right to avoid being twice placed in jeopardy for the same offense when the Superior Court failed to provide him with "an opportunity—real, not technical—to participate in the decision of whether to declare a mistrial" and to poll the individual jurors. The State contends that Torrie's counsel had an opportunity to object prior to the jury being brought into the courtroom (after the second note was delivered to the court) and at the sidebar that occurred after the court declared a mistrial but before the jury left the jury box.

■ [¶ 8] Both the United States[6] and the Maine Constitutions protect persons from being "twice put in jeopardy of life or limb" for the same offense. *See* U.S. CONST. amend. V; ME. CONST. art. 1, § 8. "A crucial aspect of double jeopardy is the right of the defendant to have his case tried completely by one tribunal." *State v. Nielsen,* 2000 ME 202, ¶ 5, 761 A.2d 876, 878. "[J]eopardy attaches when the jury is impaneled in a jury trial." *Id.* After a jury has been impaneled, a declaration of mistrial prevents the government from attempting prosecution again on the same charges unless the defendant consents to the mistrial or a manifest necessity exists. *Id.* ¶ 5, 761 A.2d at 878–79. A jury that is genuinely deadlocked and has no reasonable probability of reaching an agreement is a classic example of manifest necessity.[7] *Id.* ¶ 6, 761 A.2d at 879; *see also State v. Landry,* 600 A.2d 101, 102 (Me.1991).

■ [¶ 9] "Although the trial court is granted broad discretion in deciding whether to declare a mistrial and discharge a jury, the power to declare such a mistrial 'ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes.'" *State v. Derby,* 581 A.2d 815, 817 (Me.1990) (internal cites omitted). On appeal of a denial of a motion to dismiss on grounds of double jeopardy following a mistrial based on manifest necessity, "we review the ruling of the motion justice to determine whether the findings of fact of the trial justice, and of the motion justice, are supported by substantial evidence, and whether the legal conclusion is correct." *Niel-*

4. The docket and the motion judge's opinion indicates that the motion judge had reviewed the case file which included the trial transcript.

5. *State v. Derby,* 581 A.2d 815, 817 (Me.1990).

6. The double jeopardy clause of the Fifth Amendment was made applicable to the states through the Fourteenth Amendment, *Benton*

*v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

7. Other examples of manifest necessity include "discovery of bias among the jurors; illness of a juror, judge, or the defendant; or when a fixed court term ends prior to verdict." *Nielsen,* 2000 ME 202, ¶ 6, 761 A.2d at 879.

*sen,* 2000 ME 202, ¶ 7, 761 A.2d at 879 (citing *Landry,* 600 A.2d at 102). "In reviewing a determination that the necessity for a mistrial is manifest, *i.e.,* evident, obvious, and apparent," *see Landry,* 600 A.2d at 102, we "examine four [objective] factors to determine if a finding that the jury was deadlocked is supported and the declaration of a mistrial is justified," *see Derby,* 581 A.2d at 817. Those factors are

1) The number of hours the jury had deliberated,

2) the number of communications from the jury indicating an inability to reach a verdict,

3) whether each individual juror was asked whether any reasonable expectations of reaching a verdict existed, and

4) whether the defendant's counsel was provided an opportunity to participate in the decision to declare a mistrial.[8]

*Landry,* 600 A.2d at 102; *see also Derby,* 581 A.2d at 817; *State v. McConvey,* 459 A.2d 562, 567 (Me.1983); *State v. Linscott,* 416 A.2d 255, 260 (Me.1980).

[¶ 10] Applying these factors to past cases has yielded the following results: In *Linscott, Derby,* and *Landry* we concluded that the record failed to demonstrate a manifest necessity for the granting of a mistrial. In *Linscott,* deliberations lasted less than two hours, there was only one note from the jury indicating deadlock, neither the foreman nor the individual jurors were polled, and defense counsel was not given an opportunity to participate in the decision whether to grant a mistrial.

*Id.* at 259–60. In *Derby,* deliberations lasted a total of five hours and thirty-five minutes, including an hour for receiving instructions and listening to a read-back of testimony. *Derby,* 581 A.2d at 817. The court received one communication from the jury; the jury was polled and instructed to continue deliberations. *Id.* at 817–18. With no further communications from the jury or inquiries from the court a mistrial was declared and the jurors were sent home over the objections of counsel. *Id.* at 818. In *Landry,* deliberations lasted approximately three hours including lunch and time spent in the courtroom, and the jury communicated twice that a verdict could not be reached. *Landry,* 600 A.2d at 102. The court polled the foreman but not the individual jurors, and defense counsel's opportunity to participate in the decision to declare a mistrial was limited to an objection to the court's announced intention to take such an action. *Id.*

[¶ 11] In *McConvey* and *State v. Henderson,* 435 A.2d 1106 (Me.1981),[9] we held that the trial court did not exceed the bounds of its discretion when it found that the jury was genuinely deadlocked. In *McConvey,* the jury deliberated eight hours and communicated twice that a vote could not be reached. *McConvey,* 459 A.2d at 567. After the second note, the court polled the members of the jury individually, declared a mistrial, and then solicited statements from counsel for the record. *Id.* In a footnote, we stated that no prejudice had occurred even though the

---

8. The State refers to the four factors as the *Derby* factors. These four factors will continue to be referred to as the *Derby* factors for ease of reference and clarity.

9. Henderson filed a writ of habeas corpus in the United States District Court for the District of Maine asserting that he was in custody in violation of the double jeopardy clause of the Fifth Amendment of the United States Constitution. *Henderson v. Wright,* 533 F.Supp. 1373, 1374 (D.Me.1982). Notwithstanding the fact that Henderson had no opportunity to participate in the decision whether to declare a mistrial, the federal District Court found that there was "an adequate basis in the present record for the determination by the presiding justice that the jury was in fact hopelessly deadlocked." *Id.* at 1378.

solicitation of comments from counsel occurred after a mistrial was announced because the jury was still in the jury box and it had not been discharged. *Id.* at 567 n. 5. Therefore, "the trial justice retained the then present ability to undo the mistrial if either counsel had articulated any persuasive reason to do so." *Id.* In *Henderson,* after one hour and ten minutes the jury sent a note to the court indicating the jury was split with six jurors voting guilty, four jurors voting not guilty, and two jurors undecided. *Henderson,* 435 A.2d at 1107. The court reinstructed the jury and the jury continued to deliberate for more than an hour before sending a second note to the court indicating that it was deadlocked. *Id.* After the second note, the court polled the foreperson and then declared a mistrial. *Id.*

■ [¶ 12] It is apparent from reviewing *Linscott, Derby, Landry, McConvey,* and *Henderson* that the *Derby* factors are given equal weight and must be viewed as a whole. In this case, the record supports the finding that the jury was genuinely deadlocked. The jury was discharged six hours and forty minutes after it began deliberations in a trial that lasted a day and a half, excluding time spent receiving additional instructions and read-backs. There were two communications from the jury; the notes stated that the jury was unable to reach a verdict. After the first note, the court polled the individual members of the jury. The results of the poll indicated that nine of the twelve jurors felt that further deliberations would not be useful while three jurors indicated that further deliberations would be helpful. When the court received the jury's second note, the court informed counsel that it

intended to declare a mistrial if the contents of the note were confirmed by the foreman. The foreman confirmed that further deliberations would be useless and the court declared a mistrial.

[¶ 13] Applying the *Derby* factors to the facts of this case, the court's declaration of a mistrial based on manifest necessity was not an abuse of discretion. The trial court was cognizant of the factual issues to be resolved and observed the jury and its foreperson. Although the court did not have counsel approach the bench prior to declaring the mistrial, the court's announcement of its intentions outside of the jury's presence gave counsel for Torrie notice of its intended action, an opportunity to object and, thus, participate in a limited fashion in the decision whether to declare a mistrial.[10]

The entry is:

Judgment affirmed.

---

10. As we implied in *McConvey,* 459 A.2d at 567 n. 5, and *Linscott,* 416 A.2d at 260, the better rule of practice is for the court, once it has decided to declare a mistrial, to have counsel approach the bench, to inform counsel of the court's intention, and allow counsel a genuine opportunity to participate in the decision making process.