MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2017 ME 44
Docket:        Pen-16-284
Submitted
  On Briefs:   February 10, 2017
Decided:       March 9, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

KENNETH A. JANDREAU

GORMAN, J.

[¶1]   Kenneth A. Jandreau appeals from an order of the trial court (Penobscot County, *Anderson, J.*) denying his motion to dismiss a criminal complaint against him.  The court concluded that the prosecution did not violate Jandreau's rights pursuant to the Double Jeopardy Clauses of the United States and Maine Constitutions because, at his first trial, there had been manifest necessity for a mistrial and there had been no prosecutorial misconduct.  We affirm the judgment.

I.  BACKGROUND

[¶2]   On May 8, 2013, Jandreau crashed his car into a utility pole in Millinocket.  He was charged with operating under the influence (Class D),

2

29-A M.R.S. § 2411(1-A)(A) (2016), to which he pleaded not guilty. In May of 2015, the court held a two-day jury trial on the matter.

[¶3] During the trial, a witness for the State produced a document that had not been disclosed in discovery: an accident reconstruction report made by a State trooper.[1] Jandreau objected to the use of the accident reconstruction report at trial, and the court acceded to Jandreau's objection by restricting the State's use of information from the report. Thereafter, the trooper who created the report testified that information obtained from the car's event data recorder, or "black box," showed that Jandreau had been traveling at a speed of sixty-four miles per hour a split second before colliding with the utility pole.

[¶4] After the close of the evidence, the jury deliberated for approximately four hours, excluding time for breaks, instructions, and polling. Three times during its deliberations, the jury sent a note to the court

---

[1] A second document produced during trial—the printout of the breath alcohol test results showing that there had been an initial calibration error on the Intoxilyzer machine during Jandreau's test—was also the subject of a motion in limine. The calibration error had not appeared on the printouts that Jandreau received before trial because it was available only to the chemist who oversees the State's Intoxilyzers, but Jandreau had been alerted to the calibration issue earlier during the discovery process. Jandreau used the report to cross-examine the chemist regarding the calibration error and also elicited testimony from his own expert witness on the reliability of the breath alcohol test results in light of the "cal check out of tolerance" reading. This document played only a very minor role in Jandreau's motion to dismiss and, because Jandreau's argument on appeal concerning the calibration error is not at all persuasive, we do not discuss it further.

indicating that it was unable to reach a verdict. The court polled the jury twice, asking each juror whether he or she believed that the jury was deadlocked and whether he or she believed that the jury would be able to reach a verdict with further deliberation or instruction. When the court polled the jury after its second note, eleven jurors stated that they believed the jury would not be able to reach a verdict. One juror told the court that the jury might be able to reach a verdict with further deliberation. Based on this report, the court sent the jury back for further deliberation. When the court polled the jury after its third note, however, all twelve jurors reported that they were deadlocked and that they would not be able to reach a verdict. Concluding that the jury was genuinely deadlocked, the court sua sponte declared a mistrial due to manifest necessity.

[¶5] In September of 2015, Jandreau moved to dismiss the criminal complaint against him,[2] contending—on double jeopardy grounds—that lack of manifest necessity for a mistrial and prosecutorial misconduct in the first trial barred a second prosecution for the same crimes. The court held a hearing on the motion, during which it was revealed that miscommunication

---

[2] After the mistrial, the State amended the criminal complaint, adding a charge of driving to endanger (Class E), 29-A M.R.S. § 2413(1) (2016), based on the same incident. Jandreau pleaded not guilty to the new charge.

between investigating officers from two different law enforcement agencies delayed the transmission of the accident reconstruction report to the prosecutor's office and to Jandreau. At the same hearing, the court also heard evidence that the accident reconstruction report showed that Jandreau had been traveling at a speed of 40.87 miles per hour when he lost control of the car and about twenty-seven miles per hour at impact, rather than the sixty-four miles per hour at impact that the trooper testified to at trial. Finally, the court heard evidence that the trooper's trial testimony had been based on the data reported by the car's black box, but that an intermittent power loss caused that data to be reported out of order. Thus, although the black box data appeared to show that the last speed recorded before impact was sixty-four miles per hour, it was, in fact, twenty-seven miles per hour.

[¶6] On May 24, 2016, the court denied Jandreau's motion to dismiss, concluding that the Double Jeopardy Clauses of the United States and Maine Constitutions did not bar a second prosecution because (1) there had been manifest necessity for a mistrial due to a genuinely deadlocked jury and (2) although the missing accident reconstruction report resulted in the presentation of incorrect information about the vehicle's speed to the jury,

there had been no prosecutorial misconduct because the State had not withheld the evidence intentionally. Jandreau appealed.[3]

## II.  DISCUSSION

[¶7]  Jandreau contends that the court erred in denying his motion to dismiss because (1) the jury was not genuinely deadlocked and (2) the prosecutor's failure to turn over evidence in discovery amounted to prosecutorial misconduct.  We disagree with both contentions.

[¶8]  Absent the defendant's consent to or the manifest necessity for a mistrial, the Double Jeopardy Clauses of the United States and Maine Constitutions preclude the State from bringing a second prosecution of the defendant on the same charges after the declaration of a mistrial.  *State v. Torrie*, 2002 ME 59, ¶ 8, 794 A.2d 82; *see* U.S. Const. amend. V; Me. Const. art. I, § 8.  When the trial court declares a mistrial due to manifest necessity and the defendant then appeals the court's denial of a motion to dismiss on double jeopardy grounds, "we review the ruling of the motion justice to determine whether the findings of fact of the trial justice, and of the motion justice, are supported by substantial evidence, and whether the legal conclusion is

---

[3]  Although no final judgment has been issued in this matter, Jandreau's appeal is not barred by the final judgment rule.  *State v. Hoover*, 2015 ME 109, ¶ 10 n.1, 121 A.3d 1281 (explaining that an appeal of the denial of a motion to dismiss based on double jeopardy grounds is not barred as interlocutory).

6

correct." *State v. Nielsen*, 2000 ME 202, ¶ 7, 761 A.2d 876. Having carefully reviewed the record in this case, we conclude that the court's findings of fact and conclusions of law both at trial and in ruling on the motion to dismiss are supported by substantial evidence and are legally sound.

A.     Genuinely Deadlocked Jury

[¶9] Regarding Jandreau's first contention on appeal, we conclude that there was manifest necessity for a mistrial due to a genuinely deadlocked jury. In reviewing the declaration of a mistrial, we afford the trial court great deference in the exercise of its discretion, *State v. McConvey*, 459 A.2d 562, 566 (Me. 1983), and examine four objective factors (the *Derby* factors):

> 1) [t]he number of hours the jury had deliberated,
>
> 2) the number of communications from the jury indicating an inability to reach a verdict,
>
> 3) whether each individual juror was asked whether any reasonable expectations of reaching a verdict existed, and
>
> 4) whether the defendant's counsel was provided an opportunity to participate in the decision to declare a mistrial.

*Torrie*, 2002 ME 59, ¶ 9, 794 A.2d 82 (quotation marks omitted).

[¶10] The record provides a clear factual foundation for appellate review of the *Derby* factors: the jurors deliberated for about four hours; they sent three notes to the court indicating that they could not reach a verdict; the

court twice asked each juror whether he or she believed that the jury was deadlocked and whether he or she believed that the jury could reach a verdict with further deliberation or instruction; and—by discussing all three jury notes with Jandreau's counsel, asking for his input on the reinstruction of the jury, the polling of the jury, and the decisions to send the jury back into deliberations, and by giving him the opportunity to be fully heard—the court gave Jandreau's counsel ample opportunity to participate in the decision to declare a mistrial.

[¶11]  Giving these factors equal weight and viewing them as a whole, the trial court made a thorough and appropriate effort to determine whether the jury was genuinely deadlocked, and did not abuse its discretion in determining that the jury was unable to reach a verdict and declaring a mistrial for that reason.[4]  *See id.* ¶ 12.  In short, it did not err in determining that there was manifest necessity for a mistrial.  *Cf. id.* ¶¶ 3-5, 12-13 (holding that there was manifest necessity for a mistrial where the jury deliberated for

---

[4]  Moreover, Jandreau's assertion that "there was reasonable probability that the jury could reach a verdict" (emphasis omitted) and his comparison of the instant case with the facts of *State v. Derby* are, *at best*, unsupported by record evidence: at one point, a *single* juror indicated that he or she believed the jury might be able to reach a verdict; after its third attempt at deliberation, all twelve jurors *unanimously* agreed that they were unable to reach a verdict.  This is precisely the opposite of the situation in *Derby*.  *See State v. Derby*, 581 A.2d 815, 817-18 (Me. 1990) (holding that the jury was not genuinely deadlocked where eleven of twelve jurors believed that the jury could reach a verdict with further deliberation).

8

six hours, sent two notes to the court declaring it was deadlocked, and was polled once, and where defense counsel was allowed to approach the bench once); *McConvey*, 459 A.2d at 567 (holding that there was manifest necessity for a mistrial where the jury deliberated for eight hours, sent two notes to the court declaring it was deadlocked, and was polled once, and where defense counsel was allowed to make a statement for the record).

B.      Prosecutorial Misconduct

[¶12]   Turning to Jandreau's second contention, we conclude that his allegations of prosecutorial misconduct are unfounded.   We take this opportunity to reiterate that "prosecutorial misconduct must rise to an egregious level for double jeopardy to bar a retrial.  [Double jeopardy bars retrial] *only where the conduct of the prosecutor is undertaken . . . to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct.*"   *State v. Chase*, 2000 ME 114, ¶ 6, 754 A.2d 961 (alteration omitted) (quotation marks omitted).   We will overturn a court's determination that there was no intentional prosecutorial misconduct only if that determination is clearly erroneous.  *Id.* ¶ 7.

[¶13]   This is clearly not a case in which the prosecutor withheld evidence to prevent the defendant's acquittal.  *See id.* ¶ 6.   First, contrary to

Jandreau's suggestion, even a generous characterization of the record reveals no indication that the jurors were likely to acquit him; there was, in fact, no information whatsoever as to the inclinations of individual jurors toward a particular verdict. *See supra* n.4. Second, the motion court's finding that the State did not intentionally withhold evidence is supported by record evidence that the prosecutor did not know of the existence of the accident reconstruction report until trial and believed that the State had turned over all discovery to Jandreau. Although the investigating officers may have been negligent in failing to transmit these documents to the prosecutor's office, there is no evidence that any representative of the State intentionally withheld anything from Jandreau.[5] *See State v. Johnson*, 2014 ME 68, ¶ 16, 92 A.3d 351 ("[B]ecause the police are the equivalent of the prosecutor for purposes of the discovery rules, the State was negligent in failing to provide the [evidence] in discovery before the trial").

[¶14] We deem the remainder of Jandreau's arguments on appeal waived. *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 ("[I]ssues

---

[5] Jandreau urges us to change the standard for prosecutorial misconduct from intent to negligence; we again decline to do so. *See State v. Johnson*, 2014 ME 68, ¶¶ 13-14, 92 A.3d 351; *State v. Chase*, 2000 ME 114, ¶ 6 n.3, 754 A.2d 961 ("As an alternative to the 'intentional prosecutorial misconduct' standard, [the defendant] invites us to adopt an 'inexcusable negligence' standard. We decline the invitation.").

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation marks omitted)).

The entry is:

Order affirmed.

---

Ezra A.R. Willey, Esq., and N. Laurence Willey, Jr., Esq., Willey Law Offices, Bangor, for appellant Kenneth A. Jandreau

R. Christopher Almy, District Attorney, Tracy Collins, Asst. Dist. Atty., and William Johnson, Stud. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2013-2659
FOR CLERK REFERENCE ONLY