MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 39
Docket:      Ken-17-210
Argued:      February 15, 2018
Decided:     March 20, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## RANDY R. MARQUIS

ALEXANDER, J.

[¶1]  Randy R. Marquis appeals from a judgment of conviction entered in the Unified Criminal Docket (Kennebec County, *Stewart, J.*) after a jury found him guilty of three counts of possession of sexually explicit material (Class C), 17-A M.R.S. § 284(1)(C) (2017).  Marquis challenges the court's (*Murphy, J.*) denial of his motion to suppress statements and digital evidence obtained by the police after they entered his home.  We affirm the judgment.

## I.  CASE HISTORY

[¶2]  Viewing the evidence in the light most favorable to the motion court's order, *State v. Nadeau*, 2010 ME 71, ¶ 2, 1 A.3d 445, the record supports the following facts.

[¶3]  Between December 2014 and January 2015, officers with the Maine State Police Computer Crimes Unit downloaded files containing child pornography from an IP address associated with a networking device at a residence in Augusta.  On January 16, 2015, three officers, wearing plain clothes and driving unmarked vehicles, arrived at the residence.  The lead investigator walked up the front steps and knocked on the door of an enclosed porch.  Marquis answered the knock and opened the door.  The lead investigator identified himself as a State Police officer, verified the address, and stated that he was looking for the homeowner.  Marquis stated that he was the homeowner's son, to which the investigator replied, "Oh, you're his son?  Ok, well, maybe you can help me out."  The investigator then entered the enclosed porch and the entrance door closed.  The exchange lasted approximately twenty-five seconds.

[¶4]  After entering the porch, the investigator asked Marquis and Marquis's mother and father, who had joined them, whether the taxi business operating out of the home had experienced any problems on Christmas Day. When they indicated that they were not aware of any problems, the investigator told them that there was "something else" with which he would like their help. He stated that the police, while monitoring internet traffic, had observed child

pornographic files coming through the network associated with the address and asked if they knew anything about that. Marquis readily responded, "Yeah, I know what you're talking about." Marquis stated that he had received "a few" of the files while using a peer-to-peer file sharing network but that he immediately deleted them upon receipt. Marquis added that no one else used the computer besides him.

[¶5] The investigator asked whether he could look at Marquis's computer. Marquis replied, "Yeah." The investigator explained that he did not have a search warrant—and that Marquis did not have to consent to a search of his computer—but that he would like to check the accuracy of what Marquis told him by using a "search tool." Marquis responded with "yeah ok" and "I have no problem with that." Marquis then directed the lead investigator to the computer, which was located on the enclosed porch.

[¶6] While the search of the computer was being performed, Marquis answered all of the investigator's questions and provided biographical and household information. The investigator also spoke with Marquis's wife, who had come onto the porch.

[¶7] After the search was complete, the investigator showed Marquis the results, which he told Marquis revealed "hits on tons and tons of pictures." The

4

investigator told Marquis that, if Marquis gave consent, he would like to "take it back to the laboratory and do a more thorough search for illegal files."  The investigator asked Marquis if he could also take the "SD" card.  Marquis muttered his assent.

[¶8]  While speaking with Marquis and his father, the investigator gave Marquis a consent-to-search form and told him that by signing the form he was consenting to a search of the computer and the SD card for illegal contraband, specifically child pornography, and that he did not have to give consent. Marquis signed the form, asking for the date.  Before speaking with another adult member of the household, the investigator asked Marquis if he had any questions.  Marquis replied, "Nope, I'm good."

[¶9]  The interview lasted approximately thirty-seven minutes, during which the two officers who had accompanied the lead investigator to the residence entered the porch but remained largely out of Marquis's view.  At the end of the interview, the lead investigator and the other officers left the residence.  After conferring near their vehicles, however, the officers decided to arrest Marquis because of the presence of young children in the home.  The officers returned to the residence and arrested Marquis.

[¶10]  In May 2015, Marquis was indicted on three counts of possession of sexually explicit material (Class C), 17-A M.R.S. § 284(1)(C).  Numerous motions were filed, mostly related to discovery issues, and the dispositional conference was continued several times until it was held in December 2015.  Seven months later, Marquis filed a motion to suppress.  In his motion, Marquis argued that (1) he had not consented to the officers entering his home, (2) any consent given was not voluntary because the officers used deception to gain entry, (3) he did not consent to the search and seizure of his computer, and (4) the officers had subjected him to custodial interrogation without providing *Miranda* warnings.

[¶11]  In October 2016, the court held a hearing on the motion.  The court heard testimony from the lead investigator, the other two officers, and Marquis, and admitted several exhibits, including an audio recording of the interview, photographs of the porch, and the consent-to-search form signed by Marquis.  Because the court could not determine from the record when the police entered the home, the parties filed a written stipulation agreeing that the police entered the home between 2:05 and 2:30 minutes into the audio recording.

[¶12]  In January 2017, the court denied the motion to suppress.  The court found that the lead investigator did not expressly ask whether he could

6

enter, but that Marquis "assisted and cooperated with [the investigator] through his conduct when he freely let [the investigator] enter his residence after identifying himself as a law enforcement officer." The court further found that the investigator's statements about the taxi business were fleeting, occurred after he entered the residence, and did not affect Marquis's decision to consent to the search and seizure of his computer. Based on its finding, the court determined that Marquis consented to the officers' entry into his residence and consented to the search and seizure of his computer several times, both orally and in writing. The court further found that Marquis was not in custody for purposes of *Miranda* when the police interviewed him at his home.

[¶13] The court (*Stewart, J.*) held a jury trial on March 22-23, 2017. The jury found Marquis guilty of all three counts. He was sentenced to three years' imprisonment with all but six months suspended and two years' probation. Marquis timely filed this appeal.

## II. LEGAL ANALYSIS

[¶14]  Marquis argues that the court erred in finding that he consented to the officers' entry into his home, which resulted in the search and seizure of his computer, when he merely acquiesced to the officers' entry.[1]

[¶15]  When reviewing a ruling on a motion to suppress, we review the court's factual findings for clear error and its legal conclusions de novo. *State v. Prinkleton*, 2018 ME 16, ¶ 17, --- A.3d ---.  We consider the evidence, and reasonable inferences that may be drawn from the evidence, in the light most favorable to the motion court's order.  *State v. Cooper*, 2017 ME 4, ¶ 2, 153 A.3d 759.  We will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the court's decision.  *State v. Lagasse*, 2016 ME 158, ¶ 11, 149 A.3d 1153.

[¶16]  "The United States and Maine Constitutions guarantee the right to be secure in one's home from unreasonable searches and seizures."  *State v.*

---

[1]  Marquis also challenges (1) the court's determination that it was "not possible to make a finding in regard to how many officers were present on the steps at the moment entry was made," (2) the court's conclusion that he voluntarily consented to the officers' entry into his home when they did not state the purpose of their visit until after they entered, and (3) the court's conclusion that he was not in custody when the police interrogated him.  We are not persuaded by Marquis's arguments on these issues and do not address them further.

The State asserts that we could affirm the judgment on the ground that the motion court abused its discretion by not dismissing the motion when it was untimely filed and no good cause was shown for the late filing.  *See* 15 M.R.S. § 2115-A(3) (2017); M.R.U. Crim. P. 12(b)(3), 41A(b).  Because we affirm the judgment on the merits, we do not reach the State's alternative argument.

*Rabon*, 2007 ME 113, ¶ 11, 930 A.2d 268; *see* U.S. Const. amend. IV; Me. Const. art. I, § 5. A warrantless search of a home is unreasonable unless the search is conducted pursuant to a recognized exception to the warrant requirement. *Rabon*, 2007 ME 113, ¶ 11, 930 A.2d 268. Consent is a recognized exception. *Nadeau*, 2010 ME 71, ¶ 17, 1 A.3d 445.

[¶17] "Consent must be given freely and voluntarily." *Id.* The State must prove by a preponderance of the evidence that consent was objectively manifested by word or gesture. *Id.*; *see also State v. Bailey*, 2010 ME 15, ¶ 19, 989 A.2d 716. Consent requires "more than a mere acquiescence to a claim of lawful authority" and may be found when a person actively assists and cooperates with an investigation. *State v. Cress*, 576 A.2d 1366, 1367 (Me. 1990). The determination of consent is a mixed question of fact and law to be determined from all the circumstances existing at the time of the search. *Nadeau*, 2010 ME 71, ¶ 18, 1 A.3d 445; *see State v. McLain*, 367 A.2d 213, 217 (Me. 1976).

[¶18] The court's determination that Marquis consented to the officers' entry into the enclosed porch is supported by competent evidence in the record and by reasonable inferences that may be drawn from the record. Responding to a knock on the door, Marquis voluntarily opened the door and engaged in a

conversation with the lead investigator. Marquis answered the investigator's questions without hesitation and the conversation had a friendly tone. After talking for about half of a minute—while the door was being held open in the winter in Maine—the investigator suggested that Marquis may be able to assist him with an issue that he had not yet identified. The conversation continued without interruption into the porch, and the door closed behind them. After the officers entered the porch, Marquis was cooperative. He did not ask the officers to leave or indicate that the officers' presence was unwelcome. *See State v. Seamen's Club*, 1997 ME 70, ¶ 8, 691 A.2d 1248.

[¶19] Although there was no testimony that Marquis made a specific gesture—such as waving the officers in or stepping aside to let them pass—and it is not possible to determine from the audio recording whether such a gesture occurred, based on the totality of the circumstances, there is sufficient evidence in the record to support a finding that Marquis consented to the officers' entry.[2] *See Cress*, 576 A.2d at 1367; *McLain*, 367 A.2d at 216-18.

The entry is:

Judgment affirmed.

---

[2] There is no indication in the record that the police used intimidation or force to gain entry, and Marquis conceded at oral argument that the police did not assert a claim of lawful authority to enter.

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Randy R. Marquis

Maeghan Maloney, District Attorney, and Frayla Tarpinian, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2015-1273
FOR CLERK REFERENCE ONLY