MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2018 ME 142
Docket:        Aro-18-25
Argued:        September 13, 2018
Decided:       October 18, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

## STATE OF MAINE

v.

## DENNIS F. WINCHESTER

MEAD, J.

[¶1]   Dennis Winchester appeals from orders of the trial court (Aroostook County, *Hunter, J.*) denying his motions to suppress evidence that was seized by the Van Buren Police Department (VBPD) and Maine State Police (MSP) and then returned to the individuals who reported the items stolen. M.R. Crim. P. 41, 41A.[1]  Winchester contends that (1) the State's alleged failure to preserve exculpatory evidence denied him a fair trial in violation of his due process rights and (2) two search warrants failed to designate all of the items

---

\* Justice Hjelm sat at oral argument but did not participate in the development of the opinion.

[1]  Because Winchester's indictments were returned between July 2014 and March 2015—before the July 1, 2015, effective date of the Maine Rules of Unified Criminal Procedure in Aroostook County, *see* M.R.U. Crim. P. 1(e)(3)—the Maine Rules of Criminal Procedure apply to this case.

2

to be seized with adequate particularity, making the warrants unconstitutionally vague.  We discern no error and affirm.

## I.  FACTS

[¶2]  "Viewing the evidence in the light most favorable to the motion court's order[s], the record supports the following facts."  *State v. Marquis*, 2018 ME 39, ¶ 2, 181 A.3d 684 (citation omitted).  In early November 2014, VBPD received two separate complaints of stolen items.  In the first, carpentry tools were reported stolen, and Winchester's vehicle was identified by an eyewitness and by security camera footage as being at the location of the theft as it was taking place.  In response, VBPD obtained a warrant to search Winchester's and his girlfriend's residence, vehicles, campers, and storage sheds; and to seize staging, bullets for a hammer drill, batteries, and eight power tools.  The warrant thoroughly described each item to be seized using characteristics like type, manufacturer, color, dimensions, whether the equipment was corded or cordless, and any markings of the owner's initials.

[¶3]  With respect to the second complaint, truck tires and rims were reported stolen and were observed on Winchester's vehicle.  Because this incident occurred outside of VBPD's jurisdiction, VBPD relayed this complaint to MSP.

[¶4] Two days after the issuance of VBPD's warrant, VBPD and MSP executed the search warrant at Winchester's and his girlfriend's residence. The police seized several of the items listed in the warrant, as well as a .22 caliber semi-automatic rifle.[2] In addition, MSP seized Winchester's truck because the troopers observed—in plain view—tires and rims that immediately appeared to match the detailed description of those reported stolen.

[¶5] During the search, MSP photographed a large number of tools in the storage shed that they suspected were stolen. MSP and VBPD reached a verbal agreement with Winchester's girlfriend whereby she would allow them to return to the property to search for other stolen items as long as the officers and troopers did not bring third parties to inspect the items at the residence and gave her a receipt for any items seized. Later that day, MSP posted the photographs on social media, and as a result, they received several additional reports concerning stolen items.

[¶6] On November 11, 2014, MSP requested and received a second warrant authorizing a search of the storage shed and the seizure of batteries, a paint sprayer, a tool kit, gas cans, a trimmer, a ladder, and an air compressor—

---

[2] Winchester, having been convicted of burglary in 2007, was prohibited from possessing a firearm.

all described using characteristics such as brand, color, model number, and size. The warrant was executed the same day, and many items listed were seized. With Winchester's girlfriend's permission, MSP then returned to the residence on several other occasions through November and December 2014 to retrieve more items that had been reported stolen that the troopers remembered seeing while executing the search warrant. Items were seized, and the girlfriend was provided with property receipts.

[¶7] While this was occurring, VBPD received another report of missing property; an individual suspected Winchester of taking his canoe. Remembering having seen canoes on Winchester's and his girlfriend's property during the execution of VBPD's search warrant, the chief of VBPD sent an officer to the property to inspect the canoes. With the girlfriend's consent, the officer seized a canoe that matched the description of the canoe that was reported stolen.

[¶8] After seizing items over the course of November and December 2014, VBPD and MSP allowed the individuals who had reported the thefts to identify the various items that they claimed belonged to them. The police then confirmed ownership based upon whether the individuals could provide specific descriptions of the items, registration numbers, receipts,

manuals, or knowledge of identifying characteristics, such as initials or certain colored paint splatter. Once satisfied with the identifications, and after determining that the owners needed many of the items for their livelihoods or for other reasons, the police returned the items to the respective owners. The owners were told to keep the items in their custody until the case was closed in the event that the items were needed for trial.

## II. PROCEDURAL HISTORY

[¶9] As a result of VBPD's and MSP's investigations, the grand jury returned six separate indictments against Winchester charging multiple theft and burglary offenses as well as criminal mischief, violation of condition of release, and possession of a firearm by a prohibited person.[3] On August 3, 2015, Winchester moved to suppress all of the evidence seized during the November and December 2014 searches. Winchester also sought discovery sanctions for the State's return of the items to the individuals that VBPD and MSP confirmed were owners of seized property.

[¶10] The court held a consolidated evidentiary hearing on all pending motions to suppress on July 20, 2016, hearing testimony from the officers and

---

[3] The first of the six indictments was returned prior to the execution of the search warrants, making the issue of the warrants' specificity irrelevant with respect to those charges. We will, however, discuss that indictment as part of our discussion of Winchester's due process challenge.

troopers involved in the execution of the search warrants and from Winchester's girlfriend. The court also admitted in evidence the search warrants and inventories of the seized property. The court denied Winchester's motions on October 27, 2016. The court found, contrary to Winchester's contentions, that the seized property was not actually "lost or destroyed" when it was returned to its owners, that it had no apparent exculpatory value at that time, and that law enforcement officers did not act in bad faith when they returned the property. Additionally, the court found that the seizure of property not pursuant to a search warrant was justified by the plain view doctrine while law enforcement was lawfully on the premises after receiving consent.

[¶11] On February 27, 2017, Winchester filed motions for reconsideration based on the lack of specificity of the warrants. The court denied the motions, reiterating its conclusion that there was a valid basis for the seizures independent of the search warrants, namely that the items were in plain view and that Winchester's girlfriend had given consent. The court further explained its reasoning in two orders dated March 1, 2017, and August 24, 2017.

[¶12]  On November 9, 2017, one of the six indictments, charging Winchester with theft by unauthorized taking and violation of condition of release, went to a jury trial; the jury returned guilty verdicts on both counts.  At a sentencing hearing on December 6, 2017, Winchester entered conditional pleas of no contest on all counts in the remaining five indictments, preserving for appeal the issues of lack of a speedy trial, the State's failure to preserve potentially exculpatory evidence, and the lack of particularity of the search warrants.[4]  The court sentenced Winchester to a total of ten years' incarceration, and Winchester timely appealed.  *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2B(b).

## III.  DISCUSSION

[¶13]  On appeal, Winchester renews his two arguments from his motions to suppress.  First, he argues that because law enforcement returned seized items to their purported owners, the State failed to preserve exculpatory evidence in violation of his due process right to a fair trial.  Second, he argues that the two search warrants failed to designate all of the items to be seized with adequate particularity, making the warrants unconstitutionally vague.

---

[4] Winchester did not present any developed argument concerning his lack of a speedy trial to the trial court or in his briefing to this Court.  Thus, Winchester is deemed to have abandoned this issue on appeal.  *See* M.R. App. P. 7A(a)(1)(E); *State v. Jandreau*, 2017 ME 44, ¶ 14, 157 A.3d 239; *State v. Webber*, 2000 ME 168, ¶ 5 n.2, 759 A.2d 724.

8

We address Winchester's arguments in turn, reviewing the motion court's factual findings for clear error and its legal conclusions de novo. *Marquis*, 2018 ME 39, ¶ 15, 181 A.3d 684.

A.    Spoliation

[¶14]  Winchester contends that law enforcement's premature return of property to its purported owners deprived him of the ability to adequately inspect the property and to demonstrate his ownership by showing familiarity with the property, effectively spoiling the evidence.  In *State v. Cote*, 2015 ME 78, ¶ 15, 118 A.3d 805, we clarified the analysis for determining whether the State's failure to preserve evidence violated a defendant's right to a fair trial.

> First, the court must determine whether the evidence possessed an exculpatory value that was apparent before the evidence was destroyed.  If so, then the defendant must show only that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.  If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence.

*Id.* (citations and quotation marks omitted).

[¶15]   Implicit in this analysis is a threshold requirement that the defendant show that the evidence in question was in fact lost or destroyed.  In

this case, the motion court found that Winchester merely demonstrated that property was returned to its purported owners, not that evidence was unavailable for his trial. This finding was not clearly erroneous. *See Marquis*, 2018 ME 39, ¶ 15, 181 A.3d 684. Indeed, law enforcement told the purported owners that the property returned to them would have to be available for trial, and the owners were further instructed to keep the property in their custody until they were told the case was closed. Thus, Winchester failed to show upon the specific facts of this case that the evidence was lost or destroyed by the State. Even if Winchester had made the threshold showing that the evidence was lost or destroyed, he failed to demonstrate that any of the evidence had exculpatory value that was apparent at the time the items were returned to their purported owners. Because Winchester did not make the requisite initial showing, the motion court correctly concluded that there was no violation of his right to a fair trial based on the State's failure to preserve evidence.[5]

B.    Sufficiency of the Warrants

[¶16]  Winchester next contends that the warrants lacked specificity as to the items sought because although tools were listed with a corresponding

---

[5] Our conclusion is limited to the specific facts and circumstances of this case. We offer no opinion on the question of whether the release of seized items by police could constitute spoliation under other circumstances.

brand name and color, many tool companies have certain colors that are closely associated with their products. This, according to Winchester, made the addition of the color descriptions of little value and rendered the warrants unconstitutionally vague. We disagree.

[¶17] "A warrant must describe the property to be seized with such particularity that an executing officer will be able to identify it with certainty." *State v. Lehman*, 1999 ME 124, ¶ 8, 736 A.2d 256 (quotation marks omitted). We have held that warrants are sufficiently particularized when the property to be seized is described as specifically as possible under the circumstances of the case. *See id.* ¶ 10 ("The description of the computer equipment seized was as specific as the circumstances and the nature of the activity under investigation permitted." (quotation marks omitted)); *State v. Moulton*, 481 A.2d 155, 166 (Me. 1984) ("The affidavit [supporting the warrant] contained descriptions such as '10 boxes of spark plugs, 1 R-27 Battery, 3 r-55 Batteries . . . .' Under the circumstances, those descriptions were sufficiently detailed.").

[¶18] In this case, the search warrants identified the items to be seized with as much particularity as was possible under the circumstances. The warrants listed the property sought, describing the items using characteristics

such as brand name, color, whether the items were corded or cordless, dimensions, model numbers, and the presence of identifying marks such as owner's initials. Indeed, it is difficult to imagine what additional information could reasonably have been provided. This is to be contrasted with a warrant authorizing the seizure of "miscellaneous tools," or something with a similar degree of vagueness. The descriptions here were "not too elliptical to give clear guidance to the seizing officer[s]" and troopers. *State v. Thornton*, 414 A.2d 229, 232 (Me. 1980) (quotation marks omitted). Accordingly, the search warrants adequately identified the items to be seized.

The entry is:

Judgment affirmed.

_____

John W. Tebbetts, Esq. (orally), Tebbetts Law Office, LLC, Presque Isle, for appellant Dennis Winchester

Todd R. Collins, District Attorney, James G. Mitchell Jr., Asst. Dist. Atty., and Kurt A. Kafferlin, Asst. Dist. Atty. (orally), Prosecutorial District 8, Caribou, for appellee State of Maine

Aroostook County Superior Court docket numbers CR-2014-267, 515, 545, 547; CR-2015-3, 67
FOR CLERK REFERENCE ONLY